THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| JHT HOLDINGS, INC., et al. | : | Case No. 08-11267 (BLS) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

**AFFIDAVIT OF TRENWITH GROUP, LLC PURSUANT TO SECTION 330 OF THE BANKRUPTCY CODE AND RULE 2016(b) OF THE FEDERAL RULES OF <u>BANKRUPTCY PROCEDURE</u>**

STATE OF TEXAS        §

COUNTY OF DALLAS   §

1.  I, Harrison L. Price, am over twenty one (21) years of age and competent to make this affidavit (the "Affidavit").

2.  I have personal knowledge about the facts stated in this Affidavit.

3.  I am a Managing Director of Trenwith Group, LLC ("<u>Trenwith</u>" or "<u>my Firm</u>"), a limited liability company, investment bank, and FINRA (formerly NASD) member firm, with offices located at 700 North Pearl Street, Suite 2000, Dallas, Texas, 75201, and other locations throughout the United States.

4.  Subject to this Court's approval of this retention, Trenwith proposes to provide certain investment banking, valuation and corporate finance services to the Official Committee of Unsecured Creditors (the "<u>Committee</u>") of JHT Holdings, Inc., et al. (collectively, "JHT" or the "Debtors").

5.  Other than the initial communication between my Firm and representatives of the Committee with respect to the retention of my Firm in these cases, to my knowledge, neither my

**AFFIDAVIT OF HARRISON L. PRICE IN CONNECTION WITH <u>APPLICATION TO EMPLOY TRENWITH GROUP, LLC</u> – Page 1**

1451337 v1/NY

Firm nor any members of my Firm had any business, professional or other connection with the Debtors or any other party in interest.

6. To my knowledge, and subject to the disclosures listed in Exhibit 1 to this affidavit of those creditors and other parties-in-interest, which list was made known to me to be the only significant creditors and other significant parties-in-interest in this matter, neither my Firm nor any members of my Firm have any business relationships with those parties which are or may be creditors of the Debtors, or any other party in interest herein.

7. From time to time, Trenwith has been retained and likely will continue to be retained by certain creditors of the Debtors. However it is the intention of my Firm to use commercially reasonable efforts to limit any such engagements to matters unrelated to these chapter 11 cases. Trenwith has undertaken a detailed search to determine, and to disclose, whether it represents or has represented any significant creditors, equity security holders, insiders or other parties-in-interest in any unrelated matters. To the extent that I have been provided with the names of each of the persons and entities listed on Exhibit 1, Trenwith has performed a review of potential connections and relationships between Trenwith and (i) the Debtors and related non-debtor affiliates; (ii) Secured Creditors of the Debtors; and (iii) Top 20 Unsecured Creditors of the Debtors. In connection therewith, Trenwith searched its internal database, sent out e-mails to all of its managing directors and employees and investigated all responses to its search. Despite commercially reasonable efforts to identify and disclose Trenwith's connections with parties-in-interest in these cases, as made known to me in writing, because Trenwith has a large national practice and serves clients through 11 domestic offices and because the Debtors are a large enterprise with many creditors and other relationships, Trenwith is unable to state with certainty that every client representation or other connection has been disclosed. In this

regard, if Trenwith discovers additional information that, in its reasonable opinion requires disclosure, Trenwith will file a supplemental disclosure with the Court as promptly as possible.

8. To the best of my knowledge, information and belief, Trenwith neither holds nor represents any interest adverse to the Debtors, or its estates, in the matters for which it is proposed to be retained. Accordingly, Trenwith believes that it is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as modified by section 1107(b) of the Bankruptcy Code and as required by section 327(a). Therefore, I submit that the Committee's employment of Trenwith would be in the best interests of the Debtors and their estates and creditors.

9. Trenwith has extensive familiarity with the investment banking practices in insolvency matters in the bankruptcy courts in the District of Delaware and in other states. The services that Trenwith will perform for the Committee are anticipated to focus on assessing the marketplace value of the Debtors' business and assets. Trenwith will also stand ready to provide such additional investment banking services as the Committee may require.

10. In accordance with section 504 of the Bankruptcy Code, no agreement or understanding exists between me, and, to my knowledge, between my Firm or any other member or associate of my Firm, on the one hand, and any other person, on the other hand, for the sharing of compensation as my Firm may receive in connection with services rendered in these cases, nor will any division of fees prohibited by section 504 of the Bankruptcy Code be made by me, or, to my knowledge, any partner or associate of my Firm.

11. Through separate application, the Committee seeks to employ BDO Consulting, a division of BDO Seidman, LLP ("BDO"), a consulting and financial advisory firm which is, as previously mentioned in this affidavit, a majority owner of Trenwith. Although Trenwith and

BDO will be working side-by-side, each firm's primary functions will remain distinct. BDO's role will focus on accounting, financial advisory services and analysis, while Trenwith will render investment banking, valuation and corporate finance services as required.

12. Any request by Trenwith for compensation for professional services rendered for the Committee shall be based upon the time expended to render such services and at billing rates commensurate with the experience of the person performing such services and will be computed at the hourly billing rates customarily charged by Trenwith for such services. Expenses will be charged at actual costs incurred (and will include charges for copying, travel, telephone, computer rental, etc.).

13. The hourly billing rates as of the date of this Affidavit are as follows, but subject to change in the ordinary course of Trenwith's business:

| | |
|---|---|
| Managing Directors | $600 to $675 per hour |
| Principals | $300 to $600 per hour |
| Vice Presidents | $225 to $375 per hour |
| Associates | $175 to $275 per hour |
| Staff | $125 to $200 per hour |

14. In connection with the submission of periodic billings, detailed descriptions for each professional of the services performed, and the time expended on the engagement by each professional for all relevant engagement activity categories, will be provided. In addition, reasonable out-of-pocket expenses, including travel, report production, delivery services, and other costs incurred in providing the services are included, at actual cost, in the total amount billed. In the normal course of business, Trenwith revises its regular hourly rates to reflect changes in responsibilities, increased experience, and increased costs of doing business. Accordingly, Trenwith requests that the aforementioned rates be revised to the regular hourly

rates, which will be in effect from time to time. Changes in regular hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

15. Trenwith intends to apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules of the District of Delaware and any orders entered by the Court. Trenwith has agreed to accept as compensation such sums as may be allowed by the Court based upon the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estates, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance and nature of the problems, issues or tasks addressed in these cases. Trenwith understands that interim and final fee awards are subject to approval by the Court.

As set forth above, Trenwith respectfully requests that it be retained effective as of July 8, 2008 and all services rendered by TRN to the Committee from that date forward be deemed authorized pursuant to this Court's Order.

Dated: Dallas, Texas    August __1__, 2008

_____
Harrison L. Price

Sworn and subscribed to before me
this _1st_ day of August 2008.

_____
NOTARY PUBLIC

SALLIE R. SWEARINGEN
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
JANUARY 14, 2009

AFFIDAVIT OF HARRISON L. PRICE IN CONNECTION WITH
APPLICATION TO EMPLOY TRENWITH GROUP, LLC – Page 5

1451337 v1/NY