Lastly, in the event that the Bankruptcy Court authorizes the Debtors to substantively consolidate less than all of the Debtors' estates, (a) the Plan shall be treated as a separate plan of reorganization for each Debtor not substantively consolidated and (b) the Debtors shall not be required to re-solicit votes to accept or reject the Plan.

### (g)    Executory Contracts and Leases

As of the Petition Date, the Debtors were parties to hundreds of executory contracts and unexpired leases. The Debtors are conducting an analysis and review of their executory contracts and unexpired leases. The analysis seeks to: (a) identify whether any contracts or leases would aid or further the Debtors' operational restructuring initiatives; and (b) ensure that any contracts and leases that were assumed were priced competitively. This evaluation process involves a review of the costs and benefits of each contract and lease and a determination of how that contract and lease fits within the Debtors' overall business plan. The Debtors expect to file, as part of the Plan Supplement, a schedule of the executory contracts and unexpired leases they are proposing to reject.

### (h)    No Unencumbered Assets; ~~Potential Avoidance Claims~~ Waiver of Avoidance Claims

~~The Debtors are investigating transfers that may be avoided as preferential, fraudulent or otherwise under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code or applicable state law such as the Uniform Fraudulent Transfer Act (collectively, "Avoidance Actions"). The transfers being considered include transfers made to insiders, transfers (if any) for which the Debtors may not have received reasonably equivalent value and transfers (if any) made while the Debtors were insolvent or by which the Debtors became insolvent as a result of the transfer. The Debtors have filed their Schedules and Statements of Financial Affairs, which set forth payments made in the 90 days prior to the Petition Date as well as payments made to insiders in the year prior to the Petition Date. The work is on-going and the Debtors hereby reserve any and all rights that they may have to file Avoidance Actions against any recipients or other beneficiaries of the transfers being investigated. However, at this time, based on their preliminary analysis, the Debtors are unable to assign an estimated value to such potential Avoidance Actions.~~

The Debtors believe that all property of their estates is subject to valid, properly-perfected liens in favor of the DIP Lenders and Prepetition Lenders ~~(subject to the Committee's rights to challenge the extent, validity or priority of such liens pursuant to the Final DIP Order)~~ and that these estates have no material unencumbered assets. ~~If~~In addition, prior to the settlement between the Debtors, the Prepetition Lenders and the Committee, the Committee conducted a preliminary investigation into the validity, extent and priority of the Prepetition Lenders' liens and did not identify any material unencumbered assets that would be available for distribution to general unsecured creditors.

Moreover, if and to the extent that there were any ~~assets beyond the Prepetition Lenders' liens, they must be applied~~material unencumbered assets (excluding, for purposes hereof, avoidance claims, which are addressed in the next paragraph), they would have to be applied, first, to satisfy the ~~liens securing the DIP Financing and the~~ adequate protection claims of the ~~Prepetition Lenders (excluding, for purposes hereof, the proceeds of Avoidance Actions, which rights the DIP Lenders and~~ Prepetition Lenders ~~waived in connection with the Final DIP Order)~~. Any unencumbered assets remaining, ~~including Avoidance Actions and the proceeds thereof, must then~~ would then have be used to pay in full all Allowed Administrative Claims, Priority Tax Claims, ~~and~~ Other Priority Claims ~~and the attorneys' fees and costs related to the prosecution and collection of any Avoidance Actions~~. The remaining proceeds (if any) ~~will~~would then be distributed to the Holders of Allowed Class 5 Claims according to their Pro Rata shares. According to the Debtors' projections, the value of these residual interests is zero and, without the Settlement Fund, no property of any value will be distributed to or retained by Holders ~~in respect~~ of Allowed Class 5 Claims.

As part of the settlement with the Committee, the Debtors' estates have agreed to waive all potential avoidance claims under chapter 5 of the Bankruptcy Code or applicable non-bankruptcy law such as the Uniform Fraudulent Transfer Act. Based on their preliminary analysis, the Debtors do not believe that the prosecution of such claims would result in a material recovery by these estates. Moreover, the prosecution of such claims could have a considerably greater adverse impact on the business if the Debtors were compelled to pursue such claims against, for example, "critical vendors" who supplied fuel, decking materials or temporary labor or financed "over the road" costs for the Debtors' drivers such as hotels, meals, fuel, roadside repairs, return airfare and rental cars – all of which were essential to the Debtors' continued operations in chapter 11. Lastly, the waiver of potential avoidance claims is an integral part of the settlement with the Prepetition Lenders and the Committee. As a result, the Debtors are satisfied that, on the whole, the waiver of potential avoidance claims pursuant to the settlement with the Committee, which

facilitates the Debtors' reorganization, is in the best interests of the Debtors' estates and creditors (as well as other parties in interest such as the Debtors' customers, suppliers and unions).

### (i)    Exclusivity

Under the Bankruptcy Code, the Debtors have the exclusive right to file and solicit acceptance of a plan or plans of reorganization for an initial period of 120 days from the Petition Date. If the Debtors file a plan within this exclusive period, then the Debtors have the exclusive right for 180 days from the Petition Date to solicit acceptances to its plan. During these exclusive periods, no other party in interest may file a competing plan of reorganization, however, a court may extend or reduce these periods upon request of a party in interest and "for cause." Without further order of the Bankruptcy Court, the Debtors' exclusive filing period will expire on October 22, 2008, and the Debtors' exclusive solicitation period will expire on December 22, 2008.

## ARTICLE III.

### SUMMARY OF JOINT PLAN OF REORGANIZATION

**THE FOLLOWING SECTIONS SUMMARIZE CERTAIN KEY INFORMATION CONTAINED IN THE PLAN. THIS SUMMARY REFERS TO, AND IS QUALIFIED IN ITS ENTIRETY BY, REFERENCE TO THE PLAN. THE TERMS OF THE PLAN WILL GOVERN IN THE EVENT ANY INCONSISTENCY ARISES BETWEEN THIS SUMMARY AND THE PLAN. THE COURT HAS NOT CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT.**

**Section 3.01    Classification and Treatment of Claims and Interests**

### (a)    Unclassified Claims

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims and DIP Facility Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan. These unclassified Claims are treated as follows:

### (i)    Administrative Claims

Except as otherwise provided for in the Plan, and subject to the requirements of Section 12.01 of the Plan, each Holder of an Allowed Administrative Claim shall, in full satisfaction, release, settlement and discharge of such Allowed Administrative Claim: (a) to the extent such Claim is due and owing on the Effective Date, be paid in full, in Cash, on the Distribution Date; (b) to the extent such Claim is not due and owing on the Effective Date, be paid in full, in Cash, in accordance with the terms of any agreement between the Debtors and such Holder, or when such Claim becomes due and owing under applicable non-bankruptcy law or in the ordinary course of business; or (c) receive such other treatment as to which such Holder may agree with the Debtors or Reorganized Debtors.

### (ii)    Priority Tax Claims

#### a)    In General

Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, each Holder of an Allowed Priority Tax Claim (other than IFTA Priority Tax Claims, which are addressed separately below) shall, in full satisfaction, release, and discharge thereof: (a) to the extent such Claim is due and owing on the Effective Date, be paid in full, in Cash, on the Distribution Date; (b) to the extent such Claim is not due and owing on the Effective Date, be paid in full, in Cash, in accordance with the terms of any agreement between the Debtors and such Holder, or when such Claim becomes due and owing under applicable non-bankruptcy law or in the ordinary course of business; or (c) receive such other treatment as to which such Holder may agree with the Debtors or Reorganized Debtors.

#### b)    IFTA Priority Tax Claims

Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, each Holder of an IFTA Priority Tax Claim shall, in full satisfaction, release, and discharge thereof: (a) to the extent such Claim is due and owing on the Effective Date, receive five equal installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed amount of such Claim, with payments due on the annual anniversary of the Petition Date and the last payment due on the fifth (5th) anniversary of the Petition Date; (b) to the extent such Claim is not due and owing on the Effective Date, be paid in full, in Cash, in accordance with the terms of any agreement between the Debtors and such Holder, or when such Claim becomes due and owing under applicable non-bankruptcy law or in the ordinary course of business; or (c) receive such other treatment as to which such Holder may agree with the Debtors or Reorganized Debtors.

(iii)        **DIP Facility Claims**

Subject to the terms of the DIP Facility, all obligations owed under or in connection with the DIP Credit Agreement shall be paid in full in Cash on the Effective Date. No provision of the Plan, Confirmation Order, Plan Supplement or any related document may be modified to provide for a different treatment of any DIP Facility Claim absent the prior written consent of the DIP Agent and DIP Lenders.

(iv)        **Letter of Credit Claims**

On the Effective Date, any letters of credit issued and outstanding under the DIP Credit Agreement shall be (a) automatically converted to letters of credit issued pursuant to the Exit Revolving Facility, (b) backstopped through the posting by the Borrower of a supporting letter of credit or letters of credit with the DIP Agent from a letter of credit issuer satisfactory to the DIP Agent and the Majority Lenders (as defined in the DIP Agreement) in a face amount equal to 105% of the sum of all outstanding Letter of Credit Obligations, provided, however, that such backstopped Letter of Credit Obligations shall expire or terminate within three months of the DIP Credit Agreement Maturity Date or (c) cash-collateralized on the DIP Credit Agreement Maturity Date.

(b)        *Classification of Claims and Interests*

The categories of Claims and Interests set forth below classify Claims and Interests for all purposes, including for purposes of voting, confirmation and distribution pursuant to this Plan and sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest shall be deemed classified in a particular Class only to the extent that it qualifies within the description of such Class, and shall be deemed classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. Notwithstanding anything to the contrary in the Plan, a Claim or Interest shall be deemed classified in a Class only to the extent that such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

The Plan provides for the substantive consolidation of the Estates into a single Estate for all purposes associated with Confirmation and consummation of the Plan. As a result, each Class of Claims and Interests will be treated as against a single consolidated Estate without regard to the separate identification of the Debtors.

All Claims (except for Administrative Claims, Priority Tax Claims and DIP Facility Claims, which are not classified pursuant to section 1123(a)(1) of the Bankruptcy Code) are classified as follows:

| Summary of Status and Voting Rights | | | |
|---|---|---|---|
| Class | Designation | Impairment | Entitled to Vote |
| 1 | Prepetition Advance Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Prepetition Facilities Claims | Impaired | Entitled to Vote (Impaired) |
| 3 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote (Impaired) |
| 6 | ~~ESOP Put~~Intercompany Claims | ~~Impaired~~Unimpaired | Not Entitled To Vote (Deemed to ~~Reject~~Accept) |
| 7 | ~~Intercompany~~ESOP Put Claims | ~~Unimpaired~~Impaired | Not Entitled to Vote (Deemed to ~~Accept~~Reject) |

| 8 | Intercompany Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 9 | Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

### (c)    Voting; Presumptions

#### (i)    Acceptance by Impaired Classes

Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under the Plan, shall be entitled to vote to accept or reject the Plan. An Impaired Class of Claims shall have accepted the Plan if (i) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. An Impaired Class of Interests shall have accepted the Plan if the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept the Plan.

#### (ii)    Voting Presumptions

Claims and Interests in Unimpaired Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan. Claims and Interests in Impaired Classes that do not entitle the Holders thereof to receive or retain any property under the Plan are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

### (d)    Unimpaired Classes

#### (i)    Class 1:  Prepetition Advance Claims

Class 1 consists of all Prepetition Advance Claims.[8] Prepetition Advance Claims are classified separately from Prepetition Facilities Claims (Class 2) to account for the fact that the former were priming or "first out" loans required under the Prepetition Credit Documents to be paid in full prior to the Prepetition Facilities Claims. Each Holder of an Allowed Prepetition Advance Claim shall, in full satisfaction, release, settlement, discharge of and in exchange for such Allowed Claim: (i) have such Allowed Claim paid in full, in Cash, on the Effective Date, or (ii) receive such other treatment as may be agreed to between the Holder and the Debtors or Reorganized Debtors.

#### (ii)    Class 3:  Other Secured Claims

Class 3 consists of all Secured Claims against the Debtors other than Claims in Classes 1 or 2. For purposes of the Plan, each Allowed Other Secured Claim will be deemed a separate subclass. Each Holder of an Allowed Class 3 Claim will, in full satisfaction, release, settlement, discharge of and in exchange for such Allowed Class 3 Other Secured Claim: (i) at the Debtors' option, either have the property that serves as Collateral for its Claim returned or have its Claim cured and Reinstated within the meaning of section 1124(2) of the Bankruptcy Code; or (ii) receive such other treatment as may be agreed to between the Holder and the Debtors or Reorganized Debtors.

#### (iii)    Class 4:  Other Priority Claims

Class 4 consists of all Other Priority Claims. These Claims are primarily for employee wages, vacation pay, severance pay, contributions to benefit plans and other similar amounts. The Debtors are seeking one or more orders approving the payment of all or substantially all of the Other Priority Claims in the ordinary course during the

---

[8]    Pursuant to the terms of the Interim DIP Order, interim borrowing under the DIP Credit Agreement were used in part to repay the Prepetition Advances provided by those Prepetition Lenders funding the DIP Facility (approximately $7,300,000 of $8,500,000). The balance remaining of approximately $1,200,000 constitutes the Prepetition Advance Claims classified in Class 1 of the Plan.

pendency of the Chapter 11 Cases. To the extent such relief is not granted or such Claims are not paid prior to the Effective Date then, pursuant to the Plan, the legal, equitable and contractual rights of the Holders of Allowed Class 4 Claims shall be unaltered by the Plan. Each Holder of an Allowed Class 4 Claim, will, in full satisfaction, release, settlement, and discharge of and in exchange for such Allowed Claim: (i) to the extent such claim is due and owing on the Effective Date, have such Allowed Claim paid in full, in Cash, on the Distribution Date; (ii) to the extent such Allowed Claim is not due and owing on the Effective Date, be paid in full, in Cash, in accordance with the terms of any agreement between the parties, or as may be due and owing under applicable non-bankruptcy law or in the ordinary course of business; or (iii) receive such other treatment as may be agreed to between the Holder and the Debtors or Reorganized Debtors.

### (iv)    Class ~~7~~6: Intercompany Claims

Class ~~7~~6 consists of all Intercompany Claims. On the Effective Date, each Class ~~7~~6 Claim shall be Reinstated. Intercompany Claims held by or against a Dissolved Debtor shall be deemed transferred to the Reorganized Debtor to which such Debtor's assets are revested pursuant to Section 4.05 of the Plan.

### (v)    Class 8: Intercompany Interests

Class 8 consists of all Intercompany Interests. On the Effective Date, each Class 8 Interest shall be Reinstated. Intercompany Interests held by or against a Dissolved Debtor shall be deemed transferred to the Reorganized Debtor to which such Debtor's assets are revested pursuant to Section 4.05 of the Plan.

### (e)    *Impaired Classes of Claims*

### (i)    Class 2: Prepetition Facilities Claims

Class 2 consists of all ~~Claims against the Debtors secured by and to the extent of the value (as of the Petition Date), if any, of the Collateral securing such Claims directly or indirectly arising from or under, or relating in any way to, the Prepetition Credit Documents~~Prepetition Facilities Claims. On the Effective Date, the~~Each~~Each Holder of an Allowed Class 2 Claim shall, in full satisfaction, release, settlement, discharge of and in exchange for such Allowed Class 2 Claim~~.~~: (i) receive ~~the following: (i)~~ its Pro Rata share of the Exit Second-Lien Loan; and (ii) receive its Pro Rata share of 70% of the New Stock of Reorganized Holdings, subject to dilution only by any New Stock, options, or other equity awards issued pursuant to the Management Incentive Plan (if any); and (iii) waive its ~~Pro Rata share of~~right to assert an unsecured deficiency claim ("Unsecured Deficiency Claim") ~~in the compromised amount of $65,000,000, held by the Prepetition Agent for the pro rata benefit of the Prepetition Lenders, which shall constitute an Allowed Class 5 Claim.[9]~~pursuant to section 506(a)(1) of the Bankruptcy Code, whether as a Class 5 Claim or otherwise. At the election of each Holder of an Allowed Class 2 Claim, in its sole discretion, the New Stock it receives shall be New Limited Voting Common Stock in lieu of New Common Stock. ~~Each~~Upon acceptance of this Plan by Class 2, each Holder of an Allowed Class 2 Claim shall be deemed to authorize and consent to, among other things, (i) the distribution, on the Effective Date, of up to 30% of the New Stock (subject to dilution only by any New Stock, options, or other equity awards issued pursuant to the Management Incentive Plan (if any)) to the Exit Revolving Lenders, to each according to its Pro Rata share of the Exit Revolving Loan, and (ii) the distribution of the Settlement Fund as set forth in Section 3.07(b) of the Plan. At the election of each Exit Revolving Lender, it its sole discretion, the New Stock it receives shall be New Limited Voting Common Stock in lieu of New Common Stock. In addition, on

---

[9]    ~~As part of the pre-negotiated restructuring terms, the Debtors. the Prepetition Agent and the Prepetition Lenders party to the Lockup Agreement agreed to establish the amount of the Unsecured Deficiency Claim at $65 million. Given the substantial extent to which the Prepetition Lenders are undersecured and the fact that no distribution will be made on General Unsecured Claims. it was an appropriate exercise of the Debtors' business judgment at the time to compromise the amount of the Unsecured Deficiency Claim at $65 million. Moreover, that value is supported by the estimated values and projections set forth herein, according to which the actual deficiency claim would exceed $65 million. Class 2 Prepetition Facilities Claims is receiving $60 million of second-lien debt plus 70% of the equity of Reorganized Holdings. Assuming the midpoint enterprise value of $85 million, the equity is valued at roughly $9.2 million, of which 70%. or $6.4 million, will be distributed to Class 2. The result is a total distribution of roughly $66.4 million to Class 2 Prepetition Facilities Claims, leaving an unsecured deficiency claim of $133 million less $66.4 million, or $66.6 million.~~

the Effective Date, any letters of credit issued and outstanding under the Prepetition Credit Agreement shall be either (a) automatically converted to letters of credit issued pursuant to the Exit Revolving Facility or (b) backstopped by Reorganized Holdings through the posting of a supporting letter of credit or letters of credit with the Prepetition Agent from a letter of credit issuer satisfactory to the Prepetition Agent and the Required Lenders (as defined in the Prepetition Credit Agreement) in a face amount equal to 105% of the sum of all outstanding letter of credit obligations under the Prepetition Credit Agreement, *provided, however*, that such backstopped letter of credit obligations shall expire or terminate within three months of the Effective Date ~~or the Plan~~.

The Holders of ~~Allowed~~ Class 2 Claims shall be entitled to vote to accept or reject the Plan ~~as part of Class 2 Prepetition Facilities Claims according to their Pro Rata share of the aggregate secured claims in Class 2 of approximately $68 million. Such Holders shall also be entitled to vote to accept or reject the Plan as part of Class 5 General Unsecured Claims according to their Pro Rata share of the Unsecured Deficiency Claim of $65 million.~~

### (ii)    Class 5:  General Unsecured Claims

~~Class 5 consists of all General Unsecured Claims, including all outstanding trade and vendor Claims, the Unsecured Insurance Claims, the Unsecured Deficiency Claim and all other Unsecured Claims against the Debtors. If and to the extent that any proceeds of avoidance actions under chapter 5 of the Bankruptcy Code remain after payment in full of all Administrative Claims, Priority Tax Claims, Other Priority Claims, and the attorneys' fees and costs related to the prosecution and collection of such avoidance actions, then such net proceeds shall be distributed by the Reorganized Debtors or Distribution Agent, as the case may be, on a Pro Rata basis to the Holders of Allowed Class 5 Claims. As a result of the foregoing, Class 5 is Impaired and the Holders of Allowed Class 5 Claims are being asked to vote to accept or reject the Plan. However, based on the Debtors' analysis and projections, (i) there are no material unencumbered assets (subject to investigation by the Committee in the manner contemplated by the Final DIP Order) and (ii) the sum of unencumbered assets (if any) plus the proceeds of avoidance actions under chapter 5 of the Bankruptcy Code (if any) will not pay in full Administrative Claims, Priority Tax Claims, Other Priority Claims and the attorneys' fees and costs related to the prosecution and collection of such avoidance actions. Consequently, the Debtors are projecting that the value of such residual interests is zero and that no property will be distributed to or retained by any Holders in respect of Allowed Class 5 Claims.~~

Class 5 consists of all General Unsecured Claims. Each Holder of an Allowed Class 5 Claim shall, in full satisfaction, release, settlement, discharge of and in exchange for such Allowed Claim, (i) be paid its Pro Rata share of the Settlement Fund, net of certain fees and expenses of the Committee's professionals if and to the extent Allowed (as set forth in Section 3.07(b) of the Plan); or (ii) receive such other treatment as may be agreed to between the Holder and the Debtors or Reorganized Debtors. Unless otherwise agreed to between the Holder and the Debtors or Reorganized Debtors, the foregoing distributions will be made on the later of (x) the Distribution Date, (y) the date that each such Claim is Allowed and (z) five Business Days after payment in full of the fees and expenses of the Committee's professionals to be paid out of the Settlement Fund pursuant to Section 3.07(b) of the Plan (*provided, however,* that if the Committee's professionals and the Debtors or Reorganized Debtors agree on amount to be withheld from the Settlement Fund as a reserve to pay such fees and expenses of the Committee's professionals, then the foregoing distributions shall be made upon the later of (x) or (y) above).

The Holders of Class 5 Claims shall be entitled to vote to accept or reject the Plan.

### (iii)    Class 6 7:  ESOP Put Claims

Class 6 7 consists of all ESOP Put Claims. The ESOP Put Claims are claims arising from an obligation to rescind purchase of a security of a debtor and, accordingly, as of the Effective Date, will be deemed subordinated pursuant to section 510(b) of the Bankruptcy Code to all other Allowed Claims. No property will be distributed to or retained by Holders of Class 6 7 Claims. Each Holder of a Class 6 7 Claim is deemed to reject the Plan.

### (iv)    Class 9:  Equity Interests

Class 9 consists of all Equity Interests. No property will be distributed to or retained by Holders of Class 9 Equity Interests and such Equity Interests shall be deemed cancelled and extinguished on the Effective Date. Each

Holder of a Class 9 Interest is deemed to reject the Plan.

### (f)        Special Provision Regarding Unimpaired Claims

Except as otherwise provided in the Plan, nothing shall affect the Debtors' rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to Setoff Claims or recoupments against Unimpaired Claims.

### (g)        Cram Down

If any Class of Claims or Interests entitled to vote on the Plan shall not vote to accept the Plan, the Debtors shall (i) seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify the Plan in accordance with Article IX of the Plan. With respect to any Class of Claims or Interests that is deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm or "cram down" the Plan pursuant to section 1129(b) of the Bankruptcy Code.

### Section 3.02        Means for Implementation of the Plan

### (a)        Continued Corporate Existence

Following the Effective Date, the Reorganized Debtors shall continue to exist as separate corporate entities or limited liability companies, as the case may be, in accordance with applicable non-bankruptcy law and pursuant to their Corporate Documents in effect prior to the Effective Date, except to the extent that such Corporate Documents are amended by the terms of this Plan or the Restated Corporate Documents.

### (b)        Corporate Action

### (i)        Cancellation of Prepetition Credit Documents and Equity Securities

On the Effective Date, except as otherwise provided for in the Plan, (i) the Prepetition Credit Documents, Equity Interests and any other note, bond, indenture, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors related to the Prepetition Credit Documents or Equity Interests shall be cancelled, and (ii) the obligations of the Debtors under any agreements, indentures or certificates of designation governing the Prepetition Facilities, Equity Interests and any other note, bond, indenture or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors related to the Prepetition Facilities or Equity Interests shall be discharged; *provided, however*, that each indenture or other agreement that governs the rights of the Holder of a DIP Claim, Prepetition Advance Claim, Prepetition Facilities Claim or Other Secured Claim that is administered by an indenture trustee, an agent, or a servicer shall continue in effect solely for the purposes of (a) allowing such indenture trustee, agent, or servicer to make the distributions to be made on account of such Allowed Claims under the Plan as provided in Article III of the Plan and (b) permitting such indenture trustee, agent, or servicer to maintain any rights or liens it may have for fees, costs and expenses under such indenture or other agreement; and *provided further*, that the provisions of clause (ii) of this paragraph shall not affect the discharge of the Debtors' liabilities under the Bankruptcy Code and the Confirmation Order or result in any expense or liability to the Reorganized Debtors. Any actions taken by an indenture trustee, an agent, or a servicer that are not for the purposes authorized in Section 4.02(a) of the Plan shall not be binding upon the Debtors.

### (ii)        Restated Corporate Documents

The Corporate Documents of Holdings are being amended and restated to satisfy the provisions of the Plan and the Bankruptcy Code and shall include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, (x) a provision prohibiting the issuance of non-voting equity securities, and (y) if applicable, a provision as to the classes of securities issued pursuant to the Plan or thereafter possessing voting power, for an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends. The Restated

Corporate Documents of Holdings will be filed as part of the Plan Supplement. On the Effective Date or as soon thereafter as is practicable, Reorganized Holdings will file with the Secretary of the State of Delaware an amended certificate of incorporation pursuant to sections 103 and 303 of Delaware General Corporation Law.

### (iii)    Other General Corporate Matters

On or after the Effective Date, the Debtors and/or Reorganized Debtors will take such action as is necessary under the laws of the State of Delaware, federal law and other applicable law to effect the terms and provisions of the Plan. Without limiting the foregoing, the issuance of the New Stock, the election and appointment of directors or officers, adoption and implementation of the Management Incentive Plan (if any), the dissolution of the Dissolved Debtors, and any other matter involving the corporate structure of the Reorganized Debtors, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to section 303 of the Delaware General Corporation Law (or the laws of each state pursuant to which a Reorganized Debtor is organized) without requiring any further action by the shareholders or directors of the Debtors and/or Reorganized Debtors.

### (c)    *Restructuring Transactions*

### (i)    Substantive Consolidation

The Plan shall serve as a motion by the Debtors seeking entry of an order by the Bankruptcy Court substantively consolidating all of the Estates into a single consolidated Estate for all purposes associated with Confirmation and consummation of the Plan, as more fully addressed in Section 2.02(f) above.

### (ii)    New Securities

### a)    Authorization

As of the Effective Date, Reorganized Holdings will be authorized to issue the New Stock and any options, warrants or other equity awards reserved for the Management Incentive Plan, if any, without further act or action under applicable law, regulation, order or rule.

### b)    Issuance

The Confirmation Order shall provide that, pursuant to section 1145 of the Bankruptcy Code, the issuance of the New Stock shall be exempt from the registration requirements of the Securities Act, as amended, and any other applicable law requiring registration prior to the offering, issuance, distribution or sale of securities; *provided*, that if the issuance of any of the New Stock does not qualify for an exemption under section 1145 of the Bankruptcy Code, the New Stock will be issued in a manner which qualifies for another available exemption, whether as a private placement under Rule 506 under the Securities Act in which securities are issued only to "accredited investors," as such term is defined in Rule 501 under the Securities Act, or otherwise. In the event the issuance of any of the New Stock does not qualify for the exemption from securities laws under section 1145 of the Bankruptcy Code and the Debtors elect to pursue an exemption under Rule 506 under the Securities Act for securities issued only to "accredited investors," then each Holder of an Allowed Class 2 Claim and each Exit Revolving Lender may be required, as a condition to receiving such shares of New Stock, to provide the Debtors with a representation, in form and substance reasonably satisfactory to the Debtors, that it is an "accredited investor" and such other representations as the Debtors may reasonably request in order to determine that such shares of New Stock were offered and issued in a private placement to "accredited investors" only under Rule 506 under the Securities Act. All securities issued pursuant to the Plan will be deemed issued as of the Effective Date regardless of the date actually distributed.

c)    **Registration Rights Agreement; Shareholders Agreement**

Without limiting the effect of section 1145 of the Bankruptcy Code, upon the Effective Date, the Registration Rights Agreement and Shareholders Agreement shall each be deemed to become valid, binding and enforceable in accordance with their respective terms, and each holder of New Stock shall, upon the Effective Date (or, in the event of a party exercising any warrants to purchase shares of New Stock, upon such exercise), be bound by the Shareholders Agreement irrespective of whether such party is a signatory thereto. The Registration Rights Agreement shall provide, among other things, for demand and "piggyback" registration rights for the benefit of the signatories thereto, with a priority over registration rights granted to any other holders of capital stock of Reorganized Holdings. The Shareholders Agreement shall contain, among other things, customary "drag along" rights, "tag along" rights, preemptive rights and information rights. The Restated Corporate Documents of Reorganized Holdings or Shareholders Agreement shall (x) provide that the economic rights of the New Common Stock and New Limited Voting Common Stock shall be identical and (y) restrict the voting rights of the New Common Stock such that the New Limited Voting Common Stock will not be entitled to general voting rights, but will be entitled to vote (together with the holders of the New Common Stock, as a single class) on certain non-ordinary course transactions, including (i) any authorization of, or increase in the number of shares of, or issuance of any class of capital stock *pari passu* or senior to the New Stock, (ii) any amendment to Reorganized Holdings' certificate of incorporation or by-laws, (iii) any amendment to the Shareholders Agreement, (iv) any sale, lease or other disposition of all or substantially all of the assets of Reorganized Holdings or any of its subsidiaries or affiliates through one or more transactions, (v) any recapitalization, reorganization, consolidation or merger of Reorganized Holdings or any of its subsidiaries or affiliates, (vi) any authorization, issuance or entry into an agreement for the issuance of capital stock (or any options or other securities convertible into capital stock) of Reorganized Holdings or any of its subsidiaries or affiliates, except as may be provided for under the Management Incentive Plan, and (vii) any redemption, purchase or other acquisition by Reorganized Holdings of any of its capital stock (except for purchases from employees upon termination of employment). The holders of New Limited Voting Common Stock will be entitled to a separate class vote on any amendment or modification of any rights or privileges of the New Limited Voting Common Stock that does not equally affect the New Common Stock. In any liquidation, dissolution or winding up of Reorganized Holdings, all assets will be distributed to holders of the New Stock on a pro rata basis.

d)    **Listing**

Except as may be provided in the Registration Rights Agreement, Reorganized Holdings shall not be obligated to (a) list the New Stock on a public securities exchange or (b) register the New Stock under the Securities Act or Exchange Act. In addition, the New Stock shall be subject to certain restrictions on transfer to limit the number of record holders of New Stock, to ensure that Reorganized Holdings is not required to register the New Stock under the Securities Act or Exchange Act.

(iii)    **Exit Facilities**

On the Effective Date, Reorganized Holdings, as borrower, and the other Reorganized Debtors, as guarantors, shall enter into the Exit Facilities (summarized in Section 4.01 below). The Reorganized Debtors are authorized to use the Exit Facilities for any purpose permitted thereunder, including to (a) refinance amounts outstanding on the Effective Date under the Prepetition Credit Agreements and/or DIP Credit Agreement, (b) make other payments required to be made on the Effective Date or Distribution Date, and (c) operate the business.

(iv)    **Dissolution of Certain Debtors**

On the Effective Date (i) Acquisition, the Non-Operating Debtors and certain other Debtors to be identified (collectively, with Acquisition and the Non-Operating Debtors, the "Dissolved Debtors") shall be dissolved by operation of the Plan, without any further action by the shareholders or directors thereof required, and (ii) the property of the Estates of the Dissolved Debtors shall be revested in the Reorganized Debtors pursuant to Section 4.05 of the Plan. Any defaults under any applicable agreement with the Debtors, the Reorganized Debtors, or their Affiliates allegedly arising from any of the foregoing dissolutions shall be deemed cured as of the Effective Date. The Debtors or Reorganized Debtors, as the case may be, are hereby authorized to make such filings and take such other actions as may be necessary or appropriate under applicable law to effectuate such dissolutions.

### (d)    Directors And Officers

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the identity and affiliations of each proposed initial director of the Reorganized Debtors (and, to the extent such Person is an insider of the Debtors, the nature of any compensation to such Person) shall be disclosed in the Plan Supplement.  The initial Board of Directors of Reorganized Holdings shall consist of five members, (i) one of whom shall be Reorganized Holdings' Chief Executive Officer and (ii) four of whom shall be designated as follows:  (1) one of the directors shall be elected by Holders of a majority of the New Common Stock and shall comply with the director independence requirements that are imposed on public companies with securities listed on NASDAQ; and (2) Highland Capital Management, L.P., Spectrum Partners, L.P., and D.B. Zwirn Special Opportunities Fund, L.P. shall each be entitled to appoint one member, in their sole discretion.  Each member of the initial Board of Directors of Reorganized Holdings shall assume such position on the day immediately following the Effective Date.  The initial Board of Directors of Reorganized Holdings shall serve for an initial term of two years.  Thereafter, the Board of Directors of Reorganized Holdings will be elected in accordance with the Restated Corporate Documents of Reorganized Holdings and applicable non-bankruptcy law.  Those directors and officers of the Debtors who continue to serve after the Effective Date, if any, shall not be liable to any Person for any Claim that arose prior to the Effective Date in connection with such directors' or officers' service to the Debtors, in their capacity as director or officer.  The candidate for director to be elected by the holders of New Common Stock to serve as an independent director shall be independent and acceptable to holders of a majority of the New Limited Voting Common Stock in respect of such candidate's qualifications, experience, integrity, independence and disinterestedness (the latter to include the requirement that such candidate is and was never employed by any of the Debtors, the Debtors' current or former equity holders, or the Prepetition Lenders, and that such candidate has no present or former material business relationship with any of the foregoing entities.)  Prior to election to the Board of Directors of Reorganized Holdings, every candidate must pass a "background check" by any Prepetition Lender electing to conduct such a check of the kind customarily employed by such Prepetition Lender in connection with its "know your customer" policies.

### (e)    Revesting Of Assets

Except as otherwise set forth in the Plan, in the Plan Supplement or in the Confirmation Order, as of the Effective Date, all property of the Estates (including but not limited to property of the Estates of the Dissolved Debtors) shall revest in the Reorganized Debtors free and clear of all Claims, Liens, encumbrances and other Interests.  Allowed Intercompany Interests shall be Reinstated pursuant to Section 3.03(e) of the Plan, and the legal, equitable and contractual rights to which the Holders of such Allowed Intercompany Interests are entitled shall remain unaltered.  From and after the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire and dispose of property and settle and compromise Claims or Interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  Without limiting the generality of the foregoing, the Debtors may, without application to or approval by the Bankruptcy Court, pay fees that they incur after the Effective Date for professional fees and expenses.

### (f)    Preservation Of Rights Of Action; Settlement

As set forth in Section 3.07(b) of the Plan, subject to the occurrence of the Effective Date, (x) the Committee has agreed, effective as of August 29, 2008, not to commence any "Challenge" pursuant to paragraph 39(b) of the Final DIP Order, *provided* that the deadline for the Committee to commence a Challenge is being tolled to and including  the date that is twenty (20) days after (i) withdrawal of the Plan by the Debtors, (ii) any amendment or modification to the Plan that, without the consent of the Committee, materially and adversely affects the recoveries of Holders of Allowed Class 5 Claims under Section 3.04(b) of the Plan, or (iii) entry of a Final Order denying confirmation of the Plan, and *provided further* that, upon the Effective Date, the Committee will be deemed to have waived and forever released any right to commence a Challenge; and (y) the Debtors, on behalf of themselves and the Estates, are waiving all potential avoidance claims under chapter 5 of the Bankruptcy Code or applicable non-bankruptcy law.

Except to the extent suchAll other rights, Claims, causes of action, defenses, and counterclaims arenot expressly and specifically released in connection with the Plan, the Confirmation Order or in any settlement agreement approved during the Chapter 11 Cases, or as otherwise provided in the Confirmation Order or in any contract,

instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code: (1) any and all rights, Claims, causes of action (including avoidance actions or recovery actions under chapter 5 of the Bankruptcy Code), defenses, and counterclaims of or accruing to the Debtors or their Estates shall remain assets of and vest in the Reorganized Debtors, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, Claims, causes of action, defenses and counterclaims have been listed or referred to in the Plan, the Schedules, or any other document filed with the Bankruptcy Court, and (2) neither the Debtors nor the Reorganized Debtors shall waive, relinquish, or abandon (nor shall they be estopped or otherwise precluded from asserting) any right, Claim, cause of action, defense, or counterclaim that constitutes property of the Estates: (a) whether or not such right, Claim, cause of action, defense, or counterclaim has been listed or referred to in the Plan or the Schedules, or any other document filed with the Bankruptcy Court, (b) whether or not such right, Claim, cause of action, defense, or counterclaim is currently known to the Debtors, and (c) whether or not a defendant in any litigation relating to such right, Claim, cause of action, defense or counterclaim filed a proof of Claim in the Chapter 11 Cases, filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under the Plan. Without in any manner limiting the generality of the foregoing preservation of rights, notwithstanding any otherwise applicable principal of law or equity, without limitation, any principals of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, Claim, cause of action, defense, or counterclaim, or potential right, Claim, cause of action, defense, or counterclaim, in the Plan, the Schedules, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Reorganized Debtors' right to commence, prosecute, defend against, settle, and realize upon any rights, Claims, causes of action, defenses, or counterclaims that the Debtors or the Reorganized Debtors have, or may have, as of the Effective Date. The Reorganized Debtors may commence, prosecute, defend against, settle, and realize upon any rights, Claims, causes of action, defenses, and counterclaims in their sole discretion, in accordance with what is in the best interests, and for the benefit, of the Reorganized Debtors.

### (g)    *Employee and Retiree Benefits*

On and after the Effective Date, the Reorganized Debtors may: (1) honor, in the ordinary course of business, any unrejected contracts, agreements, policies, programs, and plans, in each case to the extent disclosed in the Disclosure Statement or order entered by the Bankruptcy Court approving a pleading seeking payment of, for, among other things, compensation (including equity based and bonus compensation), health care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, accidental death and dismemberment insurance for the directors, officers and employees of any of the Debtors who served in such capacity at any time, and any other Benefit Plan; and (2) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Petition Date; *provided, however*, that the Debtors' or Reorganized Debtors' performance of any employment agreement will not entitle any person to any benefit or alleged entitlement under any policy, program, or plan that has expired or been terminated before the Effective Date, or restore, reinstate, or revive any such benefit or alleged entitlement under any such policy, program, or plan. Nothing in the Plan shall limit, diminish, or otherwise alter the Reorganized Debtors' defenses, claims, any causes of action, or other rights with respect to any such contracts, agreements, policies, programs, and plans. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

### (h)    *Workers' Compensation Programs*

As of the Effective Date, the Reorganized Debtors shall continue to honor their post-petition obligations under: (i) all applicable workers' compensation laws in the states in which the Reorganized Debtors operate; and (ii) the Debtors' written contracts, agreements, agreements of indemnity, self-insurer workers' compensation bonds, policies, programs and plans for workers' compensation and workers' compensation insurance in effect for the current policy year of October 1, 2007 through September 30, 2008. Nothing in the Plan shall limit, diminish or otherwise alter the Debtors' or Reorganized Debtors' defenses, claims, rights of action, or other rights under applicable non-bankruptcy law with respect to any such contracts, agreements, policies, programs and plans; *provided, however,* that nothing in the Plan shall be deemed to impose any obligations on the Debtors or Reorganized Debtors in addition to what is required under the provisions of applicable law. Notwithstanding anything to the contrary in this Plan, the

Unsecured Insurance Claims are classified in Class 5 and, pursuant to Section 3.04(b) of the Plan, the Holders thereof shall receive no distributions in respect of such Claims.

### (i)    *Exemption From Certain Transfer Taxes*

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making of delivery of an instrument of transfer from the Debtors to the Reorganized Debtors or any other Person or entity pursuant to the Plan may not be taxed under any law imposing a stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### Section 3.03    Provisions Governing Distributions

### (a)    *Distributions For Claims Allowed As Of Effective Date*

Except as otherwise provided in the Plan or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed as of the Effective Date and entitled to a distribution under this Plan shall be made on the Distribution Date, or as soon thereafter as practicable.  The New Stock to be issued under this Plan shall be deemed issued as of the Effective Date regardless of the date on which the shares are actually distributed.

### (b)    *Interest On Claims*

Unless otherwise specifically provided by this Plan, the Confirmation Order, any other order of the Bankruptcy Court, or by applicable bankruptcy law, post-petition interest shall not accrue and not be paid on Allowed Claims when due under the contract, agreement, or other instrument governing the terms and conditions of the obligation comprising such Allowed Claim.

### (c)    *Disbursing Agent*

The Disbursing Agent shall make all distributions required under this Plan *except* distributions to the Holders of Allowed Claims in Classes 1 or 2, which distributions shall be deposited with the Agent or Prepetition Bridge Agent, as applicable, who shall promptly deliver such distributions to the Holders of such Claims in accordance with the provisions of this Plan and the Prepetition Credit Documents.

If the Disbursing Agent is an independent third party designated by the Reorganized Debtors to serve in such capacity, such Disbursing Agent shall receive, without further Bankruptcy Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Reorganized Debtors on terms acceptable to the Reorganized Debtors.  No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  If so ordered, all costs and expenses of procuring any such bond shall be paid by the Reorganized Debtors.

### (d)    *Services Of Indenture Trustees, Agents, And Servicers*

The services, with respect to consummation of the Plan, of indenture trustees, agents, and servicers under indentures and other agreements that govern the rights of Holders of Claims, shall be as set forth in Section 4.02(a) of the Plan and elsewhere in the Plan.

### (e)    *Record Date For Distributions*

At the close of business on the Distribution Record Date, the transfer ledgers for the Prepetition Facilities Claims, Old Common Stock and Old Preferred Stock shall be closed, the claims register for transfers of Claims and Interests pursuant to Bankruptcy Rule 3001(e) will be closed and there shall be no further changes in the record holders of such Claims or Interests.  The Reorganized Debtors, the Disbursing Agent and the respective Prepetition

Agent or Exit Agent shall have no obligation to recognize any transfer of such Claims or Interests occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those Holders stated on the applicable transfer ledgers as of the close of business on the Distribution Record Date.

### (f)        *Means Of Cash Payment*

Cash payments made pursuant to this Plan shall be by check, wire or ACH transfer in U.S. funds or by other means agreed to by the payor and payee or, absent agreement, such commercially reasonable manner as the payor determines in its sole discretion.

### (g)        *Delivery Of Distributions*

Distributions to Holders of Allowed Claims shall be made by the Disbursing Agent or respective Prepetition Agent or Exit Agent, as the case may be, (a) at the addresses set forth on the proofs of Claim or Interest filed by such Holders (or at the last known addresses of such Holders if no proof of Claim or Interest is filed or if the Debtors have been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related proof of Claim or Interest, (c) at the addresses reflected in the Schedules if no proof of Claim or Interest has been filed and the Disbursing Agent has not received a written notice of a change of address, (d) in the case of the Holder of a Claim that is governed by an indenture or other agreement and is administered by an indenture trustee, agent, or servicer, at the addresses contained in the official records of such indenture trustee, agent, or servicer, or (e) at the addresses set forth in a properly completed letter of transmittal accompanying securities properly remitted to the Debtors.  If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Disbursing Agent or the appropriate indenture trustee, agent, or servicer is notified of such Holder's then current address, at which time all missed distributions shall be made to such Holder without interest.  Amounts in respect of undeliverable distributions made through the Disbursing Agent or the indenture trustee, agent, or servicer, shall be returned to the Reorganized Debtors until such distributions are claimed.  All claims for undeliverable distributions must be made on or before the second (2nd) anniversary of the Effective Date, after which date all unclaimed property shall revert to the Reorganized Debtors free of any restrictions thereon and the claim of any Holder or successor to such Holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

### (h)        *Claims Paid or Payable by Third Parties*

#### (i)        **Claims Paid by Third Parties**

The Debtors or the Reorganized Debtors, as applicable, shall reduce a Claim, and such Claim shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full or in part on account of such Claim from a party that is not a Debtor or Reorganized Debtor.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

#### (ii)        **Claims Payable by Third Parties**

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(iii)        **Applicability of Insurance Policies**

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any cause of action that the Debtors or any entity may hold against any other entity, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses.

(i)        *Withholding And Reporting Requirements*

In connection with this Plan and all distributions hereunder, the Disbursing Agent shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Disbursing Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

(j)        *Calculation of Distribution Amounts of New Stock*

No fractional shares of New Stock shall be issued or distributed under the Plan by the Reorganized Debtors, the Disbursing Agent or the respective Prepetition Agent or Exit Agent. Each Person entitled to receive New Stock will receive the total number of whole shares to which such Person is entitled. Whenever any distribution to a particular Person would otherwise call for distribution of a fraction of a share, the actual distribution of shares of such New Stock shall be rounded to the next higher or lower whole number as follows: (a) fractions ½ or greater shall be rounded to the next higher whole number, and (b) fractions of less than ½ shall be rounded to the next lower whole number. The total number of shares of New Stock to be distributed to the Holder of a Class 1 Claim or an Exit Lender shall be adjusted as necessary to account for the rounding provided in the Plan. No consideration shall be provided in lieu of fractional shares rounded down.

**Section 3.04**        **Treatment of Executory Contracts and Unexpired Leases**

(a)        *Assumption/Rejection*

On the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases will be assumed by the Debtors *unless* such executory contract or unexpired lease: (a) is identified as part of the Plan Supplement as a contract or lease being rejected pursuant to the Plan; or (b) is the subject of a motion to reject filed on or before the Confirmation.

(b)        *Pass-Through*

Any rights or arrangements necessary or useful to the operation of the Debtors' business but not otherwise addressed as a Claim or Interest, including non-exclusive or exclusive patent, trademark, copyright, maskwork or other intellectual property licenses and other executory contracts not assumable under section 365(c) of the Bankruptcy Code, shall, in the absence of any other treatment, be passed through the bankruptcy proceedings for the Debtors and the Debtors' counterparty's benefit, unaltered and unaffected by the bankruptcy filings or Chapter 11 Cases.

(c)        *Assumed Executory Contracts and Unexpired Leases*

Each executory contract and unexpired lease that is assumed will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease, and (b) all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other equity interests in real estate or rights in rem related to such premises,

unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court or is the subject of a motion to reject filed on or before the Confirmation Date.

Amendments, modifications, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during their Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any claims that may arise in connection therewith.

> **(d)    *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases***

Rejection or repudiation of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such contracts or leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors or Reorganized Debtors, as applicable, from counterparties to rejected or repudiated executory contracts or unexpired leases.

> **(e)    *Intercompany Contracts, Assumed Contracts and Leases, and Leases Entered After Petition Date***

Intercompany contracts, leases entered into after the Petition Date by any Debtor, and any executory contracts and unexpired leases assumed by any Debtor, may be performed by the applicable Reorganized Debtor in the ordinary course of business.

> **(f)    *Reservation of Rights***

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an executory contract or unexpired lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have thirty days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

> **(g)    *Cure Costs***

Except to the extent different treatment is agreed to among the parties, any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to the Plan is in default will be satisfied, under section 365(b)(1) of the Bankruptcy Code, at the Debtors' option, by the payment of Cash or distribution of other property as necessary to cure any defaults.  If there is a dispute regarding (i) the nature or amount of any cure, (ii) the Debtors' ability or the ability of the Debtors' assignees to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, cure will occur following the entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

> **(h)    *Survival of Indemnification and Corporation Contribution***

On or before the Effective Date, the Debtors shall obtain reasonably sufficient tail coverage for a term of not less than six (6) years under (i) a directors and officers' liability insurance policy for the Debtors' current and former directors and officers and (ii) an employed lawyer professional liability insurance policy for the Debtors' current and former in-house attorneys.  Notwithstanding anything to the contrary contained in the Plan, the obligations of the Debtors, if any, to indemnify and/or provide contribution to its directors, officers, agents, employees and representatives who were serving in such capacity as of the Petition Date and the Effective Date, pursuant to the Corporate Documents, applicable statutes, or contractual obligations, in respect of all past, present and future actions, suits and proceedings against any of such directors, officers, agents, employees and representatives, based on any act

or omission related to the service with, for or on behalf of the Debtors will be deemed and treated as executory contracts that are assumed by the applicable Debtor or Reorganized Debtor pursuant to the Plan and section 365 of the Bankruptcy Code as of the Effective Date. Accordingly, such indemnification obligations will not be discharged, but will instead survive and be unaffected by entry of the Confirmation Order so long as such director, officer, agent, employee, or representative continues to serve in such capacity (with the authority of Reorganized Holdings) on the Effective Date.

**Section 3.05          Procedures for Resolving Disputed, Contingent and Unliquidated Claims**

    *(a)          Objections to Claims*

The Debtors or Reorganized Debtors, as applicable, shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims. From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. The Debtors or Reorganized Debtors, as applicable, also reserve the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law. Unless otherwise provided in the Plan (*e.g.*, for certain Administrative Claims, Professional Fees), objections to Claims, including Class 5 Claims, will be filed on or before the later of (a) 180 days after the applicable Bar Date established by the Bankruptcy Court and (b) such other date as may be fixed by the Bankruptcy Court, after notice and a hearing. Commencing on the date that is 210 days after the Bar Date, and approximately every 90 days thereafter until completion of the claims resolution process, the Reorganized Debtors shall file a report identifying all filed or scheduled Claims and the disposition of each such Claim. The foregoing reports shall be filed with the Bankruptcy Court and made available for review and printing at no charge on the website (http://cases.administarllc.com/JHTHolding).

    *(b)          Estimation of Claims*

Any Debtor or Reorganized Debtor, as applicable, may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether ~~such Debtor~~any party has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or Reorganized Debtors, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

    *(c)          No Distributions Pending Allowance*

Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

    *(d)          Distribution Reserve*

The Disbursing Agent shall withhold the Distribution Reserve from the Cash or other property (other than the New Stock to be distributed to the respective Prepetition Agent for the ratable benefit of the holders of Allowed Class 2 Claims or the respective Exit Agent for the ratable benefit of the Exit Lenders) to be distributed under the Plan. As to any Disputed Claim, upon a request for estimation by the Debtors, the Bankruptcy Court shall determine what amount is sufficient to withhold as the Distribution Reserve. The Debtors may request estimation for every Disputed Claim that is unliquidated and the Disbursing Agent shall withhold the Distribution Reserve based upon the estimated amount of such Claim as set forth in a Final Order. No holder of a Disputed Claim be entitled to a distribution in excess of the Debtors' estimate of such Disputed Claim unless required by Final Order. If the Debtors elect not to

request such an estimation from the Bankruptcy Court with respect to a Disputed Claim that is liquidated, the Disbursing Agent shall withhold the Distribution Reserve based upon the Face Amount of such Claim.

        *(e)*       **Distributions After Allowance**

The Reorganized Debtors or the Disbursing Agent, as the case may be, shall make payments and distributions from the Distribution Reserve to each holder of a Disputed Claim that has become an Allowed Claim in accordance with the provisions of the Plan governing the class of Claims to which such holder belongs. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Disputed Claim becomes a Final Order, the Disbursing Agent shall distribute to the holder of such Claim the distribution (if any) that would have been made to such Holder on the Distribution Date had such Allowed Claim been allowed on the Distribution Date. After a Disputed Claim is Allowed or otherwise resolved, the excess Cash or other property that was reserved on account of such Disputed Claim, if any, shall become property of the Reorganized Debtors.

        *(f)*       **General Unsecured Claims**

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors in respect of such Claim prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Reorganized Debtors or the Disbursing Agent, as the case may be, from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

        *(g)*       **Compliance with Tax Requirements/Allocations**

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances.

**Section 3.06**        **Conditions Precedent to Confirmation and Consummation of the Plan**

        *(a)*       **Conditions Precedent To Confirmation**

        (i)       The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Debtors and the Prepetition Agents, which shall include a finding of fact that the Debtors, the Prepetition Agents, the Prepetition Lenders, the DIP Agent, the DIP Lenders, the Exit Agents, the Exit Lenders, and their respective present and former members, officers, directors, managers, employees, advisors, attorneys and agents, acted in good faith within the meaning of and with respect to all of the actions described in section 1125(e) of the Bankruptcy Code and are therefore not liable for the violation of any applicable law, rule, or regulation governing such actions.

        (ii)       The Debtors shall have arranged for credit availability under the Exit Facilities in amount, form and substance acceptable to the Debtors or Reorganized Debtors, as the case may be, to provide the Reorganized Debtors and their subsidiaries with their working capital needs.

     *(b)*     ***Conditions Precedent To Consummation***

The following are conditions precedent to the occurrence of the Effective Date, each of which must be (x) satisfied or (y) waived in accordance with Article IX below:

     (i)     The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors and the Prepetition Agents and become a Final Order.

     (ii)     The Exit Credit Agreements shall have been executed and delivered by all parties thereto, and all conditions precedent to consummation thereof shall have been waived or satisfied in the manner permitted thereunder, and funding pursuant to the Exit Facilities shall have occurred.

     (iii)     The following agreements, in form and substance reasonably acceptable to the Debtors or Reorganized Debtors, as applicable, the Prepetition Agents and the Exit Agents, shall have been executed and delivered, and all conditions precedent thereto shall have been satisfied:

     (a)     Restated Corporate Documents;

     (b)     Registration Rights Agreement;

     (c)     Shareholders Agreement; and

     (d)     Exit Credit Agreements.

     (iv)     All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of this Plan shall have been obtained.

     (v)     There shall not be in effect on the Effective Date any (i) order entered by a court or (ii) any order, opinion, ruling or other decision entered by any other court or governmental entity or (iii) any applicable law staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan.

     (vi)     No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall remain pending.

     (vii)     The Effective Date shall have occurred no later than October 22, 2008.

     (viii)     The Debtors will reimburse (i) all reasonable costs and expenses, including Attorney Costs (as such term is defined in the Prepetition Credit Agreement) of the Agent and any Related Persons (as such term is used and defined in the Prepetition Credit Agreement) under the Prepetition Credit Agreement, (ii) all reasonable costs and expenses, including Attorney Costs (as such term is defined in the Prepetition Bridge Loan Agreement) of the Prepetition Bridge Agent and the Prepetition Bridge Lenders (including their advisors) in connection with the Prepetition Bridge Loan Agreement, and (iii) all reasonable costs and expenses, including Attorney Costs (as such term is defined in the DIP Credit Agreement), of the DIP Agent and reasonable Attorney Costs of the DIP Lenders.

     (ix)     Either (A) the issuance of all shares of New Stock to be issued under the Plan shall qualify for the exemption from securities laws under section 1145 of the Bankruptcy Code, (B) the Debtors shall have received from each Holder of an Allowed Class 2 Claim and each Exit Revolving Lender from whom it shall have so requested, a representation in form and substance reasonably satisfactory to the Debtors that such Person is an "accredited investor" and such other representations as the Debtors may reasonably request in order to determine that all shares of New Stock were offered and issued in a private placement to "accredited investors" only under Rule 506 under the Securities Act, or (C) the Debtors reasonably determine that the issuance of all shares of New Stock to be issued under the Plan is otherwise exempt from registration.

Establishment of the Settlement Fund, to be held by the Reorganized Debtors pursuant to, and distributed in accordance with, Section 11.02 of the Plan.

### (c)    *Substantial Consummation*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### (d)    *Waiver Of Conditions*

Each of the conditions set forth in Section 8.02 of the Plan may be waived in whole or in part by written consent of the Debtors, the Prepetition Agents, the DIP Agent and the Exit Agents, without any notice to other parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors or the Reorganized Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors or Reorganized Debtors). The failure of the Debtors or the Reorganized Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

### (e)    *Revocation, Withdrawal, Or Non-Consummation*

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation or consummation of the Plan does not occur, then (i) the Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (iii) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other Person.

~~Section 3.07          Release, Exculpation and Related Provisions~~

### Section 3.07        ~~(a)~~ Compromise and Settlement

### (a)    *General*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

### (b)    *Settlement with Committee, Prepetition Lenders*

The Debtors, the Prepetition Lenders and the Committee have reached a settlement resolving a number of potential obstacles to confirmation of the Plan. The settlement is embodied in Section 11.02 of the Plan. By virtue of that settlement, the Committee now unequivocally supports the Plan and recommends that creditors vote to accept the Plan. The settlement is subject to, among other things, the occurrence of the Effective Date of the Plan.

The more significant terms of the settlement include the following:

- Distribution to General Unsecured Creditors. The Plan requires the Debtors and the Prepetition Lenders to establish the Settlement Fund of $1,350,000 from the Prepetition Lenders' collateral, to be held by the Reorganized Debtors for the benefit of general unsecured creditors and, upon the allowance of such claims, distributed to general unsecured creditors pursuant to section 3.04(b) or the Plan.

- Committee's Professionals. The Debtors and the Prepetition Lenders have agreed to pay such fees and expenses of the Committee's professionals as may be approved by the Bankruptcy Court for the period from formation of the Committee on July 8, 2008 through the date of the settlement, August 29, 2008. In addition, such fees and expenses of the Committee's professionals as may be approved by the Bankruptcy Court for the period from August 30, 2008 through the Effective Date of the Plan shall be paid out of the Settlement Fund, which fees and expenses are expected to be modest.

- Avoidance claims. As part of the settlement with the Committee, the Debtors' estates have agreed to waive all potential avoidance claims under chapter 5 of the Bankruptcy Code or applicable non-bankruptcy law such as the Uniform Fraudulent Transfer Act. Based on their preliminary analysis, the Debtors do not believe that the prosecution of such claims would result in a material recovery by these estates. Moreover, the prosecution of such claims could have a considerably greater adverse impact on the business if the Debtors were compelled to pursue such claims against, for example, "critical vendors" who supplied fuel, decking materials or temporary labor or financed "over the road" costs for the Debtors' drivers such as hotels, meals, fuel, roadside repairs, return airfare and rental cars – all of which were essential to the Debtors' continued operations in chapter 11. Lastly, the waiver of potential avoidance claims is an integral part of the settlement. As a result, the Debtors are satisfied that, on the whole, the waiver of potential avoidance claims pursuant to the settlement with the Committee, which facilitates the Debtors' reorganization, is in the best interests of the Debtors' estates and creditors (as well as other parties in interest such as the Debtors' customers, suppliers and unions).

- Lien Challenges. The Committee has agreed to terminate the period provided in the Final DIP Order (as defined herein) for it to challenge the validity, extent or priority of the Prepetition Lenders' liens and to waive its rights to assert any such challenges, subject to the occurrence of the Effective Date of the Plan and *provided* that the Debtors do not withdraw the Plan or seek any amendment or modification, without the consent of the Committee, that materially and adversely affects the distribution to general unsecured creditors from the Settlement Fund of $1,350,000.

- No Deficiency Claim. The Prepetition Lenders have agreed to waive their unsecured deficiency claim under section 506(a)(1) of the Bankruptcy Code, which has an estimated value of $65,000,000. Such waiver materially increases the recoveries by general unsecured creditors in Class 5.

- Mutual Releases. The Debtors, the Prepetition Lenders, the Committee and the Committee's members have agreed to exchange certain releases, as set forth in sections 12.06, 12.08 and 12.09 of the Plan.

Each of the foregoing terms is an integral part of the settlement and such terms were negotiated in good faith and at arm's length by the Debtors, the Prepetition Lenders, the Committee, and their respective advisors.

**Section 3.08**      Release, Exculpation and Related Provisions

(a)      (b) **Discharge Of The Debtors**

All consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors or any of their assets or properties, and, except as otherwise provided herein or in the Confirmation Order, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, upon the Effective Date, (a) the Debtors, shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, or (iii) the Holder of a Claim based upon such debt accepted the Plan; and (b) all Interests and other rights of the equity security holders in the Debtors shall be terminated. The Confirmation Order

shall be a judicial determination of discharge of all liabilities of the Debtors, subject to the Effective Date occurring.

>        *(b)*        (c) *Exculpation And Limitation Of Liability*

None of the Debtors, Reorganized Debtors, Prepetition Agents, Prepetition Lenders, DIP Agent, DIP Lenders, Exit Agents and, Exit Lenders, or any of theirthe Committee or its members (solely in their capacity as members of the Committee), or the respective present or former members, managers, equity holders, partners, officers, directors, employees, advisors, attorneys, or agents of any of the foregoing, shall have or incur any liability to any Holder of a Claim or an Interest, or any other party in interest, or any of theirthe respective agents, employees, representatives, financial advisors, attorneys, or affiliates of any of the foregoing, or the successors or assigns of any of the foregoing, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases and the commencement thereof, negotiation of the Disclosure Statement or the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmationConfirmation of the Plan, the consummationConsummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence or, willful misconduct, intentional fraud or criminal conduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

Notwithstanding any other provision of this Plan, no Holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Reorganized Debtors, Estates, Prepetition Agents, Prepetition Lenders, DIP Agent, DIP Lenders, Exit Agents and, Exit Lenders, or the Committee or its members (solely in their capacity as members of the Committee), or the respective present or former members, managers, equity holders, partners, officers, directors, employees, advisors, attorneys, or agents of any of the foregoing, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases including the commencement thereof, the solicitation of acceptances of the Plan, the pursuit of confirmationConfirmation of the Plan, the consummationConsummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence or, willful misconduct, intentional fraud, or criminal conduct.

The foregoing exculpation and limitation on liability shall not limit, abridge, or otherwise affect the rights, if any, of the Reorganized Debtors to enforce or settle the Litigation Claims.

As set forth in Section 11.02 of the Plan, subject to the occurrence of the Effective Date, the Committee has agreed, effective as of August 29, 2008, not to commence any "Challenge" pursuant to paragraph 39(b) of the Final DIP Order, *provided* that the deadline for the Committee to commence a Challenge is hereby tolled to and including the date that is twenty (20) days after (i) withdrawal of the Plan by the Debtors, (ii) any amendment or modification to the Plan that, without the consent of the Committee, materially and adversely affects the recoveries of Holders of Allowed Class 5 Claims under Section 3.04(b) of the Plan, or (iii) entry of a Final Order denying confirmation of the Plan, and *provided further* that, upon the Effective Date, the Committee shall be deemed to have waived and forever released any right to commence a Challenge.

>        *(c)*        (d) *Permanent Injunction*

Except as otherwise expressly provided in the Plan or the Confirmation Order, all entities who have held, hold or may hold Claims against, or Interests in, the Debtors will be permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest, (ii) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against the Debtors on account of any such Claim or Interest, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Interest, and (iv) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors on account of any such Claim or

Interest.  The foregoing injunction will extend to successors of the Debtors (including, without limitation, the Reorganized Debtors) and their respective properties and interests in property.

> *(d)*   ~~(e)~~ *Releases by the Debtors*

As of the Effective Date, for good and valuable consideration~~, the adequacy of which is hereby confirmed~~ (including the contributions of such released parties to the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan), the Debtors, the Reorganized Debtors and any successors ~~shall~~will be deemed, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever ~~in connection with or related to the Debtors or the Reorganized Debtors, the Chapter 11 Cases or the Plan~~ (other than the rights of the Debtors and Reorganized Debtors and any successors to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents assumed, passed through or delivered in connection with the Plan) ~~and~~, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date ~~and~~ in any way relating to the Debtors, Reorganized Debtors or any successors or their property, the Chapter 11 Cases (including the commencement thereof), the Plan, the solicitation of acceptances of the Plan, the Disclosure Statement, the Prepetition Agents, the Prepetition Lenders, the DIP Agent, the DIP Lenders, the Exit Agents ~~and~~or the Exit Lenders, ~~and that may be~~could have been asserted by or on behalf of the Debtors, the Estates or the Reorganized Debtors against the Prepetition Agents, the Prepetition Lenders, the DIP Agent, the DIP Lenders, the Exit Agents ~~and~~, the Exit Lenders, the Committee or the Committee's members (solely in their capacity as members of the Committee), and any successors or their property, and each of ~~their~~the members, managers, directors, officers, employees, agents, financial advisors, representatives, affiliates, attorneys and professionals of any of the foregoing as of the Effective Date; *provided, however,* that such ~~releases~~release shall not operate as a waiver or release of any ~~causes~~claim or cause of action arising out of (~~x~~a) any express contractual obligation owing by any such manager, member, director, officer, or employee, agent, financial advisor, representative, affiliate, attorney or professional, or (~~y~~b) the willful misconduct, gross negligence, intentional fraud or criminal conduct of any such manager, member, director, officer, or employee, agent, financial advisor, representative, affiliate or professional.

> *(e)*   ~~(f)~~ *Releases by Holders of Claims and Interests*

Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, for good and valuable consideration~~, the adequacy of which is hereby confirmed~~ (including but not limited to the settlement embodied in Section 3.07(b) of the Plan, the waiver of avoidance claims under chapter 5 of the Bankruptcy Code or applicable non-bankruptcy law, and the distributions provided pursuant to the Plan), each of the Committee's members, each Holder of a Claim (including a Prepetition Facilities Claim, a Prepetition Advance Claim and a DIP Facility Claim) or Interest that votes in favor of the Plan (or is deemed to accept the Plan), and, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Holder of a Claim or Interest that does not vote to accept the Plan, ~~shall~~will be deemed to unconditionally, forever release, waive and discharge all Claims, Interests, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever ~~in connection with or related to the recapitalization and restructuring efforts undertaken by the Debtors, the Chapter 11 Cases (including the commencement thereof), the Plan~~ (other than the rights to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents assumed, passed through or delivered in connection with such Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors and any successors, the ~~recapitalization and restructuring efforts undertaken by the Debtors, the~~ Chapter 11 Cases (including the commencement thereof), the Plan, the solicitation of acceptances of the Plan, the Disclosure Statement, the Prepetition Agents, the Prepetition Lenders, the DIP Agent, the DIP Lenders, the Exit Agents ~~and~~or the Exit Lenders against (i) the Debtors, the Reorganized Debtors and any successors, (ii) the Debtors' present and

former managers, members, directors, officers, employees, agents, financial advisors, attorneys and professionals, (iii) the Prepetition Agents and their successors and assigns, directors, officers, employees, agents, financial advisors, attorneys, professionals and other advisors, (iv) the Prepetition Lenders and each of their successors and assigns, directors, officers, employees, agents, financial advisors, attorneys, professionals and other advisors, (v) the DIP Agent and its successors and assigns, directors, officers, employees, agents, financial advisors, attorneys, professionals and other advisors and ~~and~~ (vi) the DIP Lenders and their successors and assigns, directors, officers, employees, agents, financial advisors, attorneys, professionals and other advisors, (vii) the Exit Agents and their successors and assigns, directors, officers, employees, agents, financial advisors, attorneys, professionals and other advisors, ~~and~~ (viii) the Exit Lenders and their successors and assigns, directors, officers, employees, agents, <u>financial advisors, attorneys, professionals and other advisors, and (ix) the Committee, its members (solely in their capacity as members of the Committee), and its agents,</u> financial advisors, attorneys, professionals and other advisors; *provided, however,* that ~~the foregoing~~<u>such</u> release shall not ~~waive~~<u>operate as a waiver</u> or release <u>of</u> any ~~causes~~<u>claim or cause</u> of action arising out of (~~x~~<u>a</u>) any express contractual ~~obligations~~<u>obligation</u> owing by any such manager, member, director, officer, <u>or</u> employee, agent, financial advisor, <u>representative, affiliate,</u> attorney or professional ~~of the Debtors, the Reorganized Debtors and any successors, or (y, or (b)~~<u> or (b)</u> the willful misconduct, gross negligence, intentional fraud or criminal conduct of <u>any</u> such manager, member, director, officer, <u>or</u> employee, agent, financial advisor, representative<u>, affiliate</u> or professional ~~of the Debtors~~.

<u>Section 3.09</u>        ~~Section 3.08~~ Miscellaneous Provisions

    *(a)    Amendments and Modification*

    The Debtors may alter, amend, or modify the Plan or any exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to "substantial consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, the Debtors may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of Holders of Claims or Interests under the Plan; *provided, however,* that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

    *(b)    Bar Dates For Certain Claims*

        (i)        Administrative Claims; Substantial Contribution Claims

    The Confirmation Order will establish an Administrative Claims Bar Date for filing of all Administrative Claims, including Substantial Contribution Claims (but not including Professional Fee Claims or claims for the expenses of the members of the Committee), which date will be 45 days after the Effective Date. Holders of asserted Administrative Claims, other than Professional Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. §1930, administrative tax claims and administrative ordinary case liabilities, must submit proofs of Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so. A notice prepared by the Reorganized Debtors will set forth such date and constitute notice of this Administrative Claims Bar Date. The Debtors or Reorganized Debtors, as the case may be, shall have 45 days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.

        (ii)        Administrative Ordinary Course Liabilities

    Holders of Administrative Claims that are based on liabilities incurred in the ordinary course of the Debtors' businesses (other than Claims of governmental units for taxes (and for interest and/or penalties related to such taxes)) shall not be required to file any request for payment of such Claims. Such Administrative Claims, unless objected to by the Debtors, shall be assumed and paid by the Debtors, in Cash, pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claim. For the avoidance of doubt, Holders of Administrative Claims pursuant to section 503(b)(9) of the Bankruptcy Code **shall be required** to file a proof of Administrative Claim or before the Administrative Claims Bar Date.

(iii)        **Administrative Tax Claims**

All requests for payment of Administrative Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, must be filed and served on the Reorganized Debtors and any other party specifically requesting a copy in writing on or before the later of (a) thirty (30) days following the Effective Date; and (b) one hundred and twenty (120) days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. Any Holder of any such Claim that is required to file a request for payment of such taxes and does not file and properly serve such a claim by the applicable bar date shall be forever barred from asserting any such claim against the Debtors, the Reorganized Debtors or their property, regardless of whether any such Claim is deemed to arise prior to, on, or subsequent to the Effective Date. Any interested party desiring to object to an Administrative Claim for taxes must file and serve its objection on counsel to the Debtors and the relevant taxing authority no later than ninety (90) days after the taxing authority files and serves its application.

(iv)        **Professional Fee Claims**

All final requests for compensation or reimbursement of Professional Fees pursuant to sections 327, 328, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code for services rendered to or on behalf of the Debtors or the Committee prior to the Effective Date (other than Substantial Contribution Claims under section 503(b)(4) of the Bankruptcy Code) must be filed and served on the Reorganized Debtors and their counsel no later than 45 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on the Reorganized Debtors and their counsel and the requesting Professional or other entity no later than 45 days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

(c)        *Payment Of Statutory Fees*

On or before the Effective Date, the Debtors shall have paid in full, in Cash (including by check or wire transfer), in U.S. dollars, all fees payable pursuant to section 1930 of title 28 of the United States Code, in the amount determined by the Bankruptcy Court at the Confirmation Hearing.

(d)        *Binding Effect*

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their respective successors and assigns, including, but not limited to, the Reorganized Debtors, and all other parties-in-interest in these Chapter 11 Cases.

(e)        *Term Of Injunctions Or Stay*

Unless otherwise provided in the Plan or Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or Confirmation Order shall remain in full force and effect in accordance with their terms.

(f)        *Setoffs*

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, each Reorganized Debtor may setoff against any Allowed Claim (other than an Allowed Claim in Class 1, 2 or 3 or a DIP Facility Claim) or Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before such distribution is made), any Claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim or Interest,

to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided, however,* the neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action that such Reorganized Debtor may possess against such Holder. In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or Cause of Action of the Debtor or Reorganized Debtor, as applicable, unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

### (g)    Recoupment

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

### (h)    Hart-Scott-Rodino Compliance

Any shares of New Stock to be distributed under the provisions of the Plan to any entity required to file a Premerger Notification and Report Form under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, shall not be distributed until the notification and waiting periods applicable under such Act to such entity shall have expired or been terminated.

### (i)    Dissolution of Committee

On the Effective Date, the Committee shall dissolve and the members of the Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases.

### (j)    Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

### (k)    No Admissions

Notwithstanding anything in the Plan to the contrary, nothing in the Plan shall be deemed as an admission by the Debtors with respect to any matter set forth in the Plan, including liability on any Claim.

### (l)    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) as well as corporate governance matters with respect to the Debtors; provided, however, that corporate governance matters relating to the Debtors or Reorganized Debtors, as applicable, not organized under Delaware law shall be governed by the laws of the state of organization of such Debtor or Reorganized Debtor.

## ARTICLE IV.

### SUMMARY OF EXIT FINANCING AND SECURITIES TO BE ISSUED UNDER THE PLAN

This section sets forth a summary of certain material terms of the Exit Credit Facilities and the New Stock to be issued by Reorganized Holdings pursuant to the Plan. On the Effective Date, or as soon as practicable thereafter, the Reorganized Debtors will enter into definitive documentation with respect to the Exit Revolving Facility and Exit Second-Lien Facility, which agreements will be filed in substantially final form as part of the Plan Supplement no less than twenty (20) days prior to the Voting Deadline. In addition, the Debtors expect to enter into the Shareholders Agreement, the Registration Rights Agreement and certain ancillary documents related to issuance of the New Stock by Reorganized Holdings. The descriptions contained in this Article IV are summaries only and parties are urged not to rely on these summaries and review the documents filed as part of the Plan Supplement.

### Section 4.01        Description of Exit Credit Facilities

Prior to the Petition Date, the Debtors and certain Prepetition Lenders representing approximately 74% of the principal amount of the Debtors' prepetition secured debt signed the Lockup Agreement (described in Section 1.11 above). The Lockup Agreement provides for two exit credit facilities – (a) the proposed first-lien Exit Revolving Facility, which will provide availability of up to $35,000,000, and the proposed second-lien exit term loan in the principal amount of $60,000,000 (*i.e.*, the Exit Second-Lien Loan). Prior to the Petition Date, the Debtors also entered into the Mandate Letter (described in Section 1.11 above) and, on July 21, 2008, the Bankruptcy Court approved the Mandate Letter and authorized the Debtors to implement its terms (Docket No. 152). If the Debtors do not achieve the milestones set forth in Section 1.11 above, including Confirmation of the Plan within 110 days of the Petition Date (i.e., by October 13, 2008), the Debtors will trigger an "Event of Default" under the DIP Credit Agreement and the Lockup Agreement will terminate unless extended by the Exit Revolving Lenders. Capitalized terms used in this Section 4.01 but not defined in the Plan or Disclosure Statement shall have the meanings ascribed to such terms in this Section 4.01 or the DIP Credit Agreement, as applicable.

### (a)        *Exit Revolving Facility*

Certain of the principal terms of the Exit Revolving Facility are summarized below. The final terms are subject to, among other things, definitive documentation and, therefore, are subject to change.

| | |
|---|---|
| **Borrower:** | JHT Holdings, Inc. |
| **Guarantors:** | All of Borrower's subsidiaries |
| **New Revolver Agent:** | [to be determined] |
| **New Revolver Lenders:** | Highland, Spectrum, DB Zwirn Special Opportunities Fund, L.P. and those other Prepetition Lenders (the "New Revolver Lenders") and other lenders acceptable to the New Revolver Agent and consented to by the Borrower (whose consent shall not be unreasonably withheld) and the New Revolver Lenders that shall agree to provide, collectively, a revolving credit facility (the "New Revolver") made available to the Borrower in a principal amount of (x) $35,000,000 (the "New Revolver Commitment Amount"), including a letter of credit subfacility described below (the "LC Subfacility") plus (y) the Additional PIK Amount (as defined below) from time to time added to the New Revolver during the period from the date of initial borrowing under the New Revolver (the "Closing Date") to the Maturity Date. |
| **Letter of Credit Issuer:** | [to be determined – the "Issuer"] |
| **Amortization:** | Interest only. Principal of the Loans (as defined below) and the Additional PIK Amount shall be payable on the Maturity Date and otherwise in accordance with the |

Voluntary Prepayments and Mandatory Prepayments sections below.    All outstanding amounts shall be due and payable on the Maturity Date.

**Purpose:**    As described in the Restructuring Term Sheet and to provide for working capital and for general corporate purposes

**Maximum Amount:**    $35,000,000 in the aggregate of loans ("Loans") (which, for the avoidance of doubt, shall exclude the Additional PIK Amount).  The Loans may include up to $10,000,000 available for the issuance of letters of credit by the Issuer for the account of the Borrower ("Letters of Credit").  No Letter of Credit will have a termination date after the fifth (5th) day preceding the Maturity Date and none shall have a term of more than one year, provided, however, that each Letter of Credit may provide for automatic renewals so long as the final termination date is no later than the fifth (5th) day preceding the Maturity Date.

**Availability:**    Subject to terms to be agreed upon, the New Revolver Lenders shall make available to the Borrower any undrawn amounts on the New Revolver up to the New Revolver Commitment Amount.  For the avoidance of doubt, (a) the sum of (x) the aggregate outstanding principal amount of the Loans plus (y) the aggregate undrawn amount under the Letters of Credit shall not exceed $35,000,000 and (b) the Additional PIK Amount shall not decrease the amount of the Borrower's availability under the New Revolver or decrease the New Revolver Commitment Amount.

**Interest Rate:**    The New Revolver shall bear interest on the outstanding principal amount of each Loan and the aggregate outstanding Additional PIK Amount at a rate per annum equal to LIBOR plus 6.00%, which shall be payable in cash.  LIBOR shall be subject to a floor of 3.50%.

The New Revolver shall accrue additional interest at a rate of 3.00% per annum, which additional interest shall be paid in kind, by adding such amount to the outstanding principal balance of the New Revolver (the "Additional PIK Amount").  Notwithstanding the foregoing, such additional payment in kind interest if repaid by Borrower cannot be re-borrowed.

Interest periods shall be one month.  Cash interest shall be payable on the last day of each interest period, while payment in kind interest shall accrue and be added to principal on the last day of each interest period and on the Maturity Date.

**Default Interest:**    After the occurrence and during the continuance of any Event of Default, the New Revolver Agent may, and shall at the request of a majority of the New Revolver Lenders, apply a default rate of interest of 2.00% above the then applicable interest rate (as specified above).

**Initial Advances:**    Initial advances under the New Revolver shall be used first to satisfy any loans under the Postpetition Credit Agreement and the First Out Loans under the Prepetition Credit Agreements (to the extent any remain unpaid), as well as to reimburse any outstanding costs or expenses (including, but not limited to, attorneys' fees) of the Prepetition Agent, Postpetition Agent and counsel to the 2008 Lenders, including in their capacity as 2006 Lenders and Postpetition Lenders.

**Letters of Credit (2006 Prepetition Credit Agreement):**    The letters of credit issued and outstanding under the 2006 Prepetition Credit Agreement shall be either (a) automatically converted to letters of credit issued pursuant to the New Revolver or (b) backstopped by the Borrower through the posting of a supporting letter of credit or letters of credit with the Agent from a

letter of credit issuer satisfactory to the Agent and the Required Lenders (as defined in the 2006 Prepetition Credit Agreement) in a face amount equal to 105% of the sum of all outstanding letter of credit obligations under the 2006 Prepetition Credit Agreement, provided, however, that such backstopped letter of credit obligations shall expire or terminate within three months after the Plan Effective Date.

| | |
|---|---|
| **Letters of Credit (Postpetition Credit Agreement):** | The letters of credit issued and outstanding under the Postpetition Credit Agreement shall be either (a) automatically converted to letters of credit issued pursuant to the New Revolver, (b) backstopped through the posting by the Borrower of a supporting letter of credit or letters of credit with the Postpetition Agent from a letter of credit issuer satisfactory to the Postpetition Agent and the Majority Lenders in a face amount equal to 105% of the sum of all outstanding Letter of Credit Obligations, provided, however, that such backstopped Letter of Credit Obligations shall expire or terminate within three months of the Postpetition Credit Agreement Maturity Date or (c) cash-collateralized on the Postpetition Credit Agreement Maturity Date. |
| **Security Interests/Liens:** | The indebtedness of the Borrower under the New Revolver shall be secured by a first priority perfected security interest (subject to permitted liens) in the stock of the Guarantors and substantially all of the assets of the Borrower and Guarantors, including, but not limited to, the collateral provided under the Prepetition Credit Agreements and the Postpetition Credit Agreement (the "New Revolver Collateral"). |
| | The Collateral will be free and clear of other liens, claims and encumbrances, except the liens securing the Second Lien Term Loan and other permitted liens and encumbrances acceptable to the New Revolver Agent and set forth in the credit facility documentation. |
| **New Revolver Maturity Date:** | Three (3) years following the effective date of the Plan (the "Maturity Date"). |
| **Financial Covenants:** | Financial covenants to be agreed upon, which shall be typical and customary for loans of this type. |
| **Affirmative Covenants:** | Affirmative covenants to be agreed upon, which shall be typical and customary for loans of this type. |
| **Negative Covenants:** | Negative covenants to be agreed upon, which shall be typical and customary for loans of this type. |
| **Events of Default:** | Events of Default to be agreed upon, which shall be typical and customary for loans of this type (including customary grace, notice and cure periods). |
| **Indemnification:** | Indemnification provisions shall be substantially similar to those in the Prepetition Credit Agreements and Postpetition Credit Agreement. |
| **Fees:** | Borrower shall pay to the New Revolver Agent, for the benefit of the New Revolver Lenders, the following: (a) a fully earned, non-refundable commitment fee payable to the New Revolver Lenders equal to 3.00% of the New Revolver Commitment Amount which shall be paid on a date as may be agreed upon by the New Revolver Lenders and the Borrower and (b) a fee on the applicable unused New Revolver Commitment Amount at rate of 1.00% per annum, calculated daily and payable quarterly in arrears. |
| | Additionally, the Borrower shall pay to the New Revolver Agent for its own benefit |

an administrative fee that shall not exceed, together with the administrative fee paid by the Borrower to the Second Lien Agent (as set forth below), $75,000 in the aggregate on an annual basis.

**New Stock:** As discussed further below, each of the New Revolver Lenders shall receive their pro rata share (based on their portion of the New Revolver Commitment Amount) of 30% of the New Stock (as defined below) of the Borrower.

**Termination Fee:** Borrower shall on the Maturity Date (or on such earlier date upon which the New Revolver shall be terminated), pay a fee equal to 3.00% of the New Revolver Commitment Amount to the Agent for the benefit of the New Revolver Lenders.

**Voluntary Prepayments:** Borrower may prepay the New Revolver, in whole or in part, at any time or from time to time, without premium or penalty.

**Mandatory Prepayments:** If at any time the sum of (x) the aggregate outstanding principal amount of the Loans plus (y) the aggregate undrawn amount of the Letters of Credit under the New Revolver exceeds the New Revolver Commitment Amount, then Borrower shall repay such excess, subject to grace periods as agreed. For the avoidance of doubt, the amount of the principal obligation utilized to calculate whether a mandatory prepayment is due pursuant to the immediately preceding sentence shall not include the Additional PIK Amount. In addition, mandatory prepayments shall be required from certain asset sales, excess cash flow and casualty proceeds, in each case up to a percentage to be agreed and in each case such mandatory prepayments shall be applied first to the outstanding Loans and then to the outstanding Additional PIK Amount.

**Costs and Expenses:** The reasonable out of pocket expenses of the New Revolver Agent and New Revolver Lenders (including, but not limited to, reasonable fees and disbursements of counsel and of internal and third-party consultants and auditors advising the New Revolver Agent) shall be paid for by the Borrower.

Agent is authorized to pay or reimburse these amounts, by adding these amounts to the principal balance of the New Revolver, without advance notice to the Borrower.

**Governing Law:** New York

**Documentation:** The New Revolver shall be governed by documents (including intercreditor arrangements with the Second Lien Agent) in form and substance satisfactory to (a) the New Revolver Agent, (b) the New Revolver Lenders, and (c) those Prepetition Lenders collectively holding at least two-thirds in amount and more than one-half in number of the allowed claims held by Prepetition Lenders pursuant to the 2006 Prepetition Credit Agreement.

**Market Flex:** Lenders will be entitled, after consultation with Borrower, to change the pricing (either cash pay or payment in kind interest) in respect of the New Revolver, if Lenders determine that such changes would be necessary to achieve an optimal credit structure reflecting then current market conditions. If Borrower withholds consent, Lenders or Borrower may terminate any commitment that may have been issued with respect to New Revolver.

**Capitalized Terms** Capitalized terms used herein and not defined have the definitions set forth in the Lockup Agreement.

(b)     *Exit Second Lien Loan*

Under the terms of the Plan, the Prepetition Lenders shall exchange their Prepetition Facilities Claims for, among other things, (i) the Exit Second-Lien Loan in the principal amount of $60,000,000, and (ii) 70% of the New Stock of Reorganized Holdings (at each Prepetition Lender's election, in the form of New Common Stock or New Limited Voting Common Stock). Certain of the principal terms of the Exit Second Lien Loan are summarized below. The final terms are subject to, among other things, definitive documentation and are therefore subject to change.

| | |
|---|---|
| **Borrower:** | JHT Holdings, Inc. |
| **Guarantors:** | All of Borrower's subsidiaries |
| **Second Lien Agent:** | [to be determined] |
| **Second Lien Term Lenders:** | The 2006 Lenders under the Prepetition Credit Agreements to the extent any Obligations remain outstanding to such lenders (the "Second Lien Term Lenders"). |
| **Amount of Second Lien Term Loan:** | $60,000,000, in principal amount, under an amortizing term loan (the "Second Lien Term Loan"). The principal balance of the Second Lien Term Loan shall be due on the Term Loan Maturity Date. Amounts repaid on the Second Lien Term Loan cannot be re-borrowed. |
| **Interest Rate:** | The Second Lien Term Loan shall bear interest on the outstanding principal amount thereof at a rate per annum equal to LIBOR plus 6.50%, which shall be payable in cash (or a portion thereof payable in kind at Borrower's election as described below). LIBOR shall be subject to a floor of 3.50%. |
| | Borrower may, at the end of each interest period, elect to pay a portion of the interest described above, in kind, by adding such amount to the outstanding principal balance of the Second Lien Term Loan; provided, however, Borrower may only elect to pay in kind that portion of interest in excess of LIBOR plus 1.00%. |
| | The Second Lien Term Loan shall bear additional interest at a rate of 2.50% per annum, which additional interest shall be paid in kind by adding such amount to the outstanding principal balance of the Second Lien Term Loan. |
| | Interest periods shall be one month. Cash interest shall be payable on the last day of each interest period, while payment in kind interest shall accrue and be added to principal on the last day of each interest period and on the Maturity Date. |
| **Default Interest:** | After the occurrence and during the continuance of any Event of Default, the Second Lien Agent may, and shall at the request by a majority of the Second Lien Term Lenders, apply a default rate of interest of 2.00% above the then applicable interest rate specified above. |
| **Amortization:** | Interest only. Principal shall be payable (a) on the Maturity Date, (b) in accordance with the Voluntary Prepayments and Mandatory Prepayments sections below, or (c) otherwise with the consent of the Majority Lenders (as that term is to be defined in the New Revolver) under the New Revolver. All outstanding amounts shall be due and payable on the Maturity Date. |
| **Exchange of Obligations:** | $60,000,000 of Obligations under the Prepetition Credit Agreement shall be exchanged ratably for $60,000,000, in principal amount, under the Second Lien Term Loan. Such Obligations shall include, but not be limited to, principal, |