act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases including the commencement thereof, the solicitation of acceptances of the Plan, the pursuit of ~~confirmation~~Confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence ~~or~~, willful misconduct, intentional fraud, or criminal conduct.

The foregoing exculpation and limitation on liability shall not limit, abridge, or otherwise affect the rights, if any, of the Reorganized Debtors to enforce or settle the Litigation Claims.

As set forth in Section 11.02 of the Plan, subject to the occurrence of the Effective Date, the Committee agrees, effective as of August 29, 2008, not to commence any "Challenge" pursuant to paragraph 39(b) of the Final DIP Order, *provided* that the deadline for the Committee to commence a Challenge is tolled to and including the date that is twenty (20) days after (i) withdrawal of the Plan by the Debtors, (ii) any amendment or modification to the Plan that, without the consent of the Committee, materially and adversely affects the recoveries of Holders of Allowed Class 5 Claims under Section 3.04(b) of the Plan, or (iii) entry of a Final Order denying confirmation of the Plan, and *provided further* that, upon the Effective Date, the Committee shall be deemed to have waived and forever released any right to commence a Challenge; and *provided further* that, upon the Effective Date, the Committee shall be deemed to have waived and forever released any right to commence a Challenge.

## Section 12.07    Permanent Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, all entities who have held, hold or may hold Claims against, or Interests in, the Debtors will be permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest, (ii) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against the Debtors on account of any such Claim or Interest, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Interest, and (iv) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Interest. The foregoing injunction will extend to successors of the Debtors (including, without limitation, the Reorganized Debtors) and their respective properties and interests in property.

## Section 12.08    Releases by the Debtors

As of the Effective Date, for good and valuable consideration (including the contributions of such released parties to the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan), the adequacy of which is hereby confirmed, the Debtors, the Reorganized Debtors and any successors shall be deemed, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever ~~in connection with or related to the Debtors or the Reorganized Debtors, the Chapter 11 Cases or the Plan~~ (other than the rights of the Debtors and Reorganized Debtors and any successors to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents assumed, passed through or delivered in connection with the Plan) ~~and~~, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or

otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date ~~and~~ in any way relating to the Debtors, Reorganized Debtors or any successors or their property, the Chapter 11 Cases (including the commencement thereof), the Plan, the solicitation of acceptances of the Plan, the Disclosure Statement, the Prepetition Agents, the Prepetition Lenders, the DIP Agent, the DIP Lenders, the Exit Agents ~~and~~or the Exit Lenders, ~~and~~ that ~~may be~~could have been asserted by or on behalf of the Debtors, the Estates or the Reorganized Debtors against the Prepetition Agents, the Prepetition Lenders, the DIP Agent, the DIP Lenders, the Exit Agents ~~and~~, the Exit Lenders, the Committee or the Committee's members (solely in their capacity as members of the Committee), and any successors or their property, and each of ~~their~~the members, managers, directors, officers, employees, agents, financial advisors, representatives, affiliates, attorneys and professionals of any of the foregoing as of the Effective Date; *provided, however,* that ~~such releases~~nothing in this Section shall ~~not~~ operate as a waiver or release of any ~~causes~~claim or cause of action arising out of (~~x~~a) any express contractual obligation owing by any such manager, member, director, officer, or employee, agent, financial advisor, representative, affiliate, attorney or professional, or (~~y~~b) the willful misconduct, gross negligence, intentional fraud or criminal conduct of any such manager, member, director, officer, or employee, agent, financial advisor, representative, affiliate or professional.

**Section 12.09    Releases by Holders of Claims and Interests**

Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, for good and valuable consideration (including but not limited to the settlement embodied in Section 11.02 of the Plan, the waiver of avoidance claims under chapter 5 of the Bankruptcy Code or applicable non-bankruptcy law, and the distributions provided pursuant to the Plan), the adequacy of which is hereby confirmed, each of the Committee's members, each Holder of a Claim (including a Prepetition Facilities Claim, a Prepetition Advance Claim and a DIP Facility Claim) or Interest that votes in favor of the Plan (or is deemed to accept the Plan), and, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Holder of a Claim or Interest that does not vote to accept the Plan, shall be deemed to unconditionally, forever release, waive and discharge all Claims, Interests, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever ~~in connection with or related to the recapitalization and restructuring efforts undertaken by the Debtors, the Chapter 11 Cases (including the commencement thereof), the Plan~~ (other than the rights to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents assumed, passed through or delivered in connection with such Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors and any successors, ~~the recapitalization and restructuring efforts undertaken by the Debtors,~~ the Chapter 11 Cases (including the commencement thereof), the Plan, the solicitation of acceptances of the Plan, the Disclosure Statement, the Prepetition Agents, the Prepetition Lenders, the DIP Agent, the DIP Lenders, the Exit Agents ~~and~~or the Exit Lenders against (i) the Debtors, the Reorganized Debtors and any successors, (ii) the Debtors' present and former managers, members, directors, officers, employees, agents, financial advisors, attorneys and professionals, (iii) the Prepetition Agents and their successors and assigns, directors, officers, employees, agents, financial advisors, attorneys, professionals and other advisors, (iv) the Prepetition Lenders and each of their successors and assigns, directors, officers, employees, agents, financial advisors, attorneys, professionals and other advisors, (v) the DIP Agent and its successors and assigns, directors, officers, employees, agents, financial advisors, attorneys, professionals and other advisors, ~~and~~ (vi) the DIP Lenders and their successors and assigns, directors, officers, employees, agents, financial advisors, attorneys, professionals and other advisors,

**(vii) the Exit Agents and their successors and assigns, directors, officers, employees, agents, financial advisors, attorneys, professionals and other advisors, ~~and~~ (viii) the Exit Lenders and their successors and assigns, directors, officers, employees, agents, financial advisors, attorneys, professionals and other advisors, and (ix) the Committee, its members (solely in their capacity as members of the Committee), and its agents, financial advisors, attorneys, professionals and other advisors; *provided, however*, that ~~the foregoing~~nothing in this Section shall ~~not waive~~operate as a waiver or release of any ~~causes~~claim or cause of action arising out of (x~~a~~) any express contractual ~~obligations~~obligation owing by any such manager, member, director, officer, or employee, agent, financial advisor, representative, affiliate, attorney or professional ~~of the Debtors, the Reorganized Debtors and any successors, or~~ (y, or (b) the willful misconduct, gross negligence, intentional fraud or criminal conduct of any such manager, member, director, officer, or employee, agent, financial advisor, representative, affiliate or professional ~~of the Debtors.~~**

### Section 12.10    Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### Section 12.11    Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their respective successors and assigns, including, but not limited to, the Reorganized Debtors, and all other parties-in-interest in these Chapter 11 Cases.

### Section 12.12    Plan Supplement

Any and all exhibits, lists, or schedules not filed with the Plan shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court not later than twenty (20) days prior to the Plan Voting Deadline. Upon filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours or on its website (http://www.deb.uscourts.gov). In addition, the Plan Supplement will be made available for inspection and printing at no charge at the internet site address (http://cases.administarllc.com/JHTHolding). Holders of Claims or Interests may also obtain a copy of the Plan Supplement upon written request to the Debtors.

### Section 12.13    Notices

Any notice, request, or demand required or permitted to be made or provided under the Plan to or upon the Debtors, Reorganized Debtors or the Agent shall be (i) in writing, (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission, and (iii) deemed to have been duly given or made when actually delivered or, in the case of facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors or Reorganized Debtors:

Christopher Reehl
JHT Holdings, Inc.
10801 Corporate Drive
P.O. Box 581025
Pleasant Prairie, WI 53158
facsimile: (262) 564-4713
creehl@jhtholdings.com

  with a copy to:

Michael B. Solow
D. Tyler Nurnberg
Heath D. Rosenblat
Andrea J. Frost
Kaye Scholer LLC
70 W. Madison St., suite 4100
Chicago, IL 60602
telephone:    (312) 583-2300
facsimile:    (312) 583-2360
msolow@kayescholer.com
tnurnberg@kayescholer.com
hrosenblat@kayescholer.com
afrost@kayescholer.com

  and

David B. Stratton
Evelyn J. Meltzer
Pepper Hamilton LLP
Hercules Plaza, suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
telephone: (302) 777-6500
facsimile: (302) 421-8390
strattond@pepperlaw.com
meltzere@pepperlaw.com

If to the Agent:

General Electric Capital Corporation
401 Merrit 7
Norwalk, CT 06851
Attn: Joseph Catarina
Facsimile: 203-229-1992

Email: joseph.catarina@ge.com
and

General Electric Capital Corporation
201 Merrit 7
Norwalk, CT 06851
Attn: Douglas Taber
Email: douglas.taber@ge.com

  with a copy to:

Gary T. Holtzer
Sylvia A. Mayer
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
telephone: (212) 310-8000
facsimile: (212) 310-8007
gary.holtzer@weil.com
sylvia.mayer@weil.com

  and

Kurt F. Gwynne
Reed Smith LLP
12 Market Street, suite 1500
Wilmington, DE 19801
telephone: (302) 778-7500
facsimile: (302) 778-7575
kgwynne@reedsmith.com

If to the Committee:

Robert J. Feinstein
Bruce Grohsgal
Pachulski Stang Ziehl & Jones LLP
919 N Market St.
Wilmington, DE 19899
telephone: (302) 778-4100
rfeinstein@pszjlaw.com
bgrohsgal@pszjlaw.com

**Section 12.14**    **Term Of Injunctions Or Stay**

    Unless otherwise provided in the Plan or Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or Confirmation Order), shall

remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or Confirmation Order shall remain in full force and effect in accordance with their terms.

**Section 12.15        Setoffs**

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, each Reorganized Debtor may setoff against any Allowed Claim (other than an Allowed Claim in Class 1, 2 or 3 or a DIP Facility Claim) or Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before such distribution is made), any Claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action that such Reorganized Debtor may possess against such Holder.  In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or Cause of Action of the Debtor or Reorganized Debtor, as applicable, **unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date**, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

**Section 12.16        Recoupment**

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**Section 12.17        Release of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

**Section 12.18        Hart-Scott-Rodino Compliance**

Any shares of New Stock to be distributed under the provisions of the Plan to any entity required to file a Premerger Notification and Report Form under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, shall not be distributed until the notification and waiting periods applicable under such Act to such entity shall have expired or been terminated.

**Section 12.19        Dissolution of Committee**

On the Effective Date, the Committee shall dissolve and the members of the Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases.

**Section 12.20        No Admissions**

Notwithstanding anything herein to the contrary, nothing in the Plan shall be deemed as an admission by the Debtors with respect to any matter set forth herein, including liability on any Claim.

**Section 12.21        Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) as well as corporate governance matters with respect to the Debtors; *provided, however*, that corporate governance matters relating to the Debtors or Reorganized Debtors, as applicable, not organized under Delaware law shall be governed by the laws of the state of organization of such Debtor or Reorganized Debtor.

**ARTICLE XIII.**

**CONFIRMATION REQUEST**

The Debtors request Confirmation of the Plan under section 1129 of the Bankruptcy Code. If any Impaired Class does not accept the Plan pursuant to section 1126 of the Bankruptcy Code, the Debtors request Confirmation pursuant to section 1129(b) of the Bankruptcy Code. In that event, the Debtors reserve the right to modify the Plan to the extent (if any) that Confirmation of the Plan under section 1129(b) of the Bankruptcy Code requires modification.

*[signature page immediately follows]*

Dated:    Wilmington, Delaware
        August 22,29, 2008

                                                                                JHT HOLDINGS, INC., on Behalf
                                                                                of Itself and the Other Debtors

                                                               By:_____
                                                                 Name:
                                                                 Title:

KAYE SCHOLER LLC
Michael B. Solow
D. Tyler Nurnberg
Heath D. Rosenblat
Andrea Johnson Frost
70 West Madison Street, Suite 4100
Chicago, IL 60602
Telephone:  (312) 583-2300
Facsimile:  (312) 583-2360

    -and-

PEPPER HAMILTON LLP
David B. Stratton (DE No. 960)
Evelyn J. Meltzer (DE No. 4581)
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6500
Facsimile: (302) 421-8390

**EXHIBIT A**

**AMENDED AND RESTATED CERTIFICATE OF**
**INCORPORATION OF JHT HOLDINGS, INC.**

*(To follow as part of the Plan Supplement)*

EXHIBIT B

AMENDED AND RESTATED
BYLAWS OF JHT HOLDINGS, INC.

*(To follow as part of the Plan Supplement)*

## EXHIBIT C

## <u>REGISTRATION RIGHTS AGREEMENT</u>

***(To follow as part of the Plan Supplement)***

**EXHIBIT D**

**SHAREHOLDERS AGREEMENT**

*(To follow as part of the Plan Supplement)*

**EXHIBIT E**

**SCHEDULE OF REJECTED EXECUTORY
CONTRACTS AND UNEXPIRED LEASES**

*(To follow as part of the Plan Supplement)*

**EXHIBIT F**

**SCHEDULE OF PROPOSED DIRECTORS AND
<u>OFFICERS OF THE REORGANIZED DEBTORS</u>**

*(To follow as part of the Plan Supplement)*

Document comparison done by Workshare DeltaView on Friday, August 29, 2008
11:16:39 AM

| Input: | |
|---|---|
| Document 1 | C:\Temp\KDocs\29067219_V6.DOC |
| Document 2 | C:\Temp\KDocs\29067645_V18.DOC |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 161 |
| Deletions | 134 |
| Moved from | 3 |
| Moved to | 3 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 301 |

**EXHIBIT B**

**DEBTORS' ORGANIZATIONAL CHART**



#9748956 v2

**Exhibit C**

**FINANCIAL PROJECTIONS**

The Debtors prepared the Projections summarized in this Exhibit C for purposes of demonstrating the feasibility of the Plan (see 11 U.S.C. § 1129(a)(11)), that the Plan is in the best interests of all Holders of Claims (see 11 U.S.C. § 1129(a)(7)) and that the new debt obligations to be incurred upon emergence from these Chapter 11 Cases are necessary for the Debtors to continue as a viable going concern. The Projections are based upon, among other things, the anticipated future financial condition and results of operations of the Reorganized Debtors. The Projections reflect the Debtors' estimate of their expected consolidated financial position and results of operations of the Company.

The Debtors prepared the Projections in good faith, based upon estimates and assumptions made by the Debtors' management. The estimates and assumptions in the Projections, while considered reasonable by management, may not be realized, and are inherently subject to significant uncertainties and contingencies beyond the Debtors' control. They also are based on outside factors such as industry performance, general business, economic, competitive, regulatory, market and financial conditions, all of which are difficult to predict. Because future events and circumstances may well differ from those assumed and unanticipated events or circumstances may occur, the Debtors expect that the actual and projected results will differ and the actual results may be materially greater or less than those contained in the Projections. No representations can be made as to the accuracy of the Projections or the Reorganized Debtors' ability to achieve the projected results. Some assumptions inevitably will not materialize. Actual operating results and values may vary significantly from these Projections. Furthermore, events and circumstances occurring subsequent to the date of which these Projections were prepared may differ from any assumed facts and circumstances. Moreover, unanticipated events and circumstances may come to pass, and may affect financial results in a materially adverse or materially beneficial manner. Therefore, the Projections may not be relied upon as a guaranty or other assurance of the actual results that will occur. The inclusion of the Projections herein should not be regarded as an indication that the Debtors considered or consider the Projections to reliably predict future performance. The Projections are subjective in many respects, and thus are susceptible to interpretations and periodic revisions based on actual experience and recent developments. The Projections were not prepared with a view toward general use, but rather for the limited purpose of providing information in conjunction with the Plan. Also, they have been presented in lieu of pro forma historical financial information. The Projections should be read in conjunction with Article VIII of the Disclosure Statement, "Certain Risk Factors Affecting the Debtors," and the assumptions and qualifications set forth herein.

Although the forecasts represent the best estimates of the Debtors, for which the Debtors believe they have a reasonable basis as of the date hereof, of the results of operations and financial position of the Company after giving effect to the reorganization contemplated under the Plan, they are only estimates and actual results may vary considerably from forecasts. Consequently, the inclusion of the forecast information herein should not be regarded as a representation by the Debtors, the Debtors' advisors or any other person that the forecast results will be achieved. Holders of Claims must make their own determinations as to the reasonableness of such assumptions and the reliability of the Projections in making their determinations of whether to accept or reject the Plan, to the extent such Claims are allowed to vote.

While, after the Effective Date, the Debtors do not intend to update or otherwise revise the Projections to reflect circumstances existing since their preparation in July 2008, or to reflect the occurrence of unanticipated events, even in the event that any or all of the underlying assumptions are shown to be in error, the Reorganized Debtors will disclose their actual financial condition and results of operations during the period covered by the Projections pursuant to the terms of the Exit Credit Facilities.

The Debtors believe that a reasonable estimate of the Effective Date is September 30, 2008. If the Debtors are able to draw upon the DIP Facility as planned, it is the Debtors' belief that the Projections will not change materially even if the Effective Date does not occur on the assumed Effective Date. Additional information relating to the principal assumptions used in preparing the Projections is set forth below.

THE PROJECTIONS WERE NOT PREPARED WITH A VIEW TOWARD COMPLIANCE WITH THE GUIDELINES ESTABLISHED BY THE AICPA, THE FASB, OR THE RULES AND REGULATIONS OF THE SEC REGARDING PROJECTIONS. FURTHERMORE, THE DEBTORS' INDEPENDENT AUDITOR HAS NEITHER COMPILED NOR EXAMINED THE ACCOMPANYING PROSPECTIVE FINANCIAL INFORMATION TO DETERMINE THE REASONABLENESS THEREOF AND, ACCORDINGLY, HAS NOT EXPRESSED AN OPINION OR ANY OTHER FORM OF ASSURANCE WITH RESPECT THERETO.

THE DEBTORS DO NOT, AS A MATTER OF COURSE, PUBLISH PROJECTIONS OF THEIR ANTICIPATED FINANCIAL POSITION, RESULTS OF OPERATIONS OR CASH FLOWS. ACCORDINGLY, NEITHER THE DEBTORS NOR THE REORGANIZED DEBTORS INTEND TO, AND EACH DISCLAIMS ANY OBLIGATION TO: (A) FURNISH UPDATED PROJECTIONS TO HOLDERS OF ALLOWED CLAIMS OR EQUITY INTERESTS PRIOR TO THE EFFECTIVE DATE OR TO HOLDERS OF NEW STOCK OR TO ANY OTHER PARTY AFTER THE EFFECTIVE DATE; (B) INCLUDE ANY SUCH UPDATED INFORMATION IN ANY DOCUMENTS THAT MAY BE REQUIRED TO BE FILED WITH THE SEC; OR (C) OTHERWISE MAKE SUCH UPDATED INFORMATION PUBLICLY AVAILABLE.

*Projected Consolidated Balance Sheet*
*(in **Thousands**)*

**JHT Holdings Inc**
**CONSOLIDATED BALANCE SHEET**

| | Sept. 30 2008 | | | at December 31, | | | |
|---|---|---|---|---|---|---|---|
| | Unadj. | Adj. | Adjusted | 2008 | 2009 | 2010 | 2011 |
| **ASSETS** | | | | | | | |
| Cash, net of overdraft | $ 2,282 | $ - | $ 2,282 | $ 2,279 | $ 2,284 | $ 2,228 | $ 2,228 |
| Accounts receivable, net | 32,527 | - | 32,527 | 26,146 | 28,979 | 28,524 | 30,154 |
| Prepaid expenses & deposits | 12,859 | - | 12,859 | 16,310 | 16,238 | 21,489 | 21,489 |
| Property & Equipment, net | 23,778 | - | 23,778 | 23,592 | 24,121 | 22,886 | 22,276 |
| Insurance reimbursement receivable | - | | | | | | - |
| Goodwill & other intangibles, net | 93,740 | (35,242) | 58,498 | 57,401 | 53,014 | 48,626 | 44,239 |
| Deferred taxes | (412) | - | (412) | 194 | 194 | 1,520 | 2,854 |
| Discontinued operations | - | | | | | | - |
| ESOP restricted cash | - | | | | | | - |
| **TOTAL ASSETS** | $ 164,774 | $ (35,242) | $ 129,532 | $ 125,922 | $ 124,830 | $ 125,274 | $ 123,040 |
| | | | | | | | |
| **LIABILITIES & EQUITY** | | | | | | | |
| Accounts payable & accrued expenses | $ 16,208 | $ - | $ 16,208 | 17,013 | 20,469 | 20,436 | 22,935 |
| Insurance reserves - within SR | 20,285 | - | 20,285 | 20,285 | 20,285 | 20,285 | 20,285 |
| Insurance reserves - exceeding SR | - | | | | | | - |
| Discontinued operations | - | | | | | | - |
| Taxes payable | - | | | | | | - |
| Other long-term liabilities | 324 | - | 324 | 324 | 324 | 324 | 324 |
| DIP Credit Facility & Exit Costs | 13,326 | (13,326) | - | | | | |
| New Credit Facility | | 14,556 | 14,556 | 11,056 | 3,744 | 9,158 | 5,709 |
| New Term Loan | | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 |
| Prepetition Priming Advance | 1,230 | (1,230) | - | | | | - |
| Accumulated PIK Interest | - | | | 465 | 2,340 | 3,952 | 6,727 |
| Other current & long-term debt | 7,104 | 995 | 8,099 | 7,874 | 6,845 | 5,646 | 4,547 |
| **TOTAL LIABILITIES** | $ 68,477 | $ 60,995 | $ 119,472 | $ 117,018 | $ 114,007 | $ 119,801 | $ 119,628 |
| | | | | | | | |
| LIABILITIES SUBJECT TO COMPROMISE | 155,331 | (155,331) | - | - | - | - | - |
| MINORITY INTEREST | 852 | | 852 | 769 | 466 | 234 | 234 |
| REDEEMABLE ESOP SHARES | - | | | | | | - |
| EQUITY | (49,886) | 59,094 | 9,208 | 8,135 | 10,357 | 5,238 | 3,277 |
| **TOTAL LIABILITIES & EQUITY** | $ 164,774 | $ (35,242) | $ 129,532 | $ 125,922 | $ 124,830 | $ 125,274 | $ 123,040 |

*See Summary of Significant Assumptions and Accounting Policies*

3

Projected Consolidated Income Statement
(in Thousands)

**JHT Holdings Inc.**
**CONSOLIDATED INCOME STATEMENT**
Year ended December 31

| | 2007 | 2008 | 2009 | 2010 | 2011 |
|---|---|---|---|---|---|
| **OPERATING REVENUES** | $ 328,365 | $ 333,090 | $ 418,751 | $ 328,459 | $ 406,704 |
| Operating expenses | 331,736 | 319,689 | 394,142 | 314,658 | 388,554 |
| Other expenses / (Income) | 2,736 | 2,077 | 2,452 | 2,059 | 2,286 |
| Total expenses | 334,472 | 321,766 | 396,593 | 316,717 | 390,840 |
| **EBITDA before non-Recurring Items** | $ (6,107) | $ 11,324 | $ 22,168 | $ 9,743 | $ 15,863 |
| Depreciation and Amortization | 19,460 | 10,965 | 8,658 | 8,872 | 9,247 |
| **EBIT** | (25,557) | 359 | 13,500 | 870 | 6,616 |
| Other (Income)/Expenses: | | | | | |
| Interest & LC Fee Expense | 14,301 | 10,346 | 8,159 | 7,803 | 8,004 |
| PIK Interest Expense | - | 465 | 1,875 | 1,812 | 1,775 |
| Non-Recurring Costs | 3,766 | 11,886 | - | - | - |
| ESOP Accounting Charge | 210 | - | - | - | - |
| Minority Interest | (12) | (311) | (302) | (232) | 0 |
| Other | 684 | 65 | - | - | - |
| Total Other (Income)/Expenses | 18,929 | 22,451 | 9,732 | 8,984 | 9,779 |
| Income tax expense (benefit) | (80) | (539) | 1,547 | (2,995) | (1,202) |
| Discontinued operations, net of tax | 1,320 | - | - | - | - |
| **NET INCOME** | $ (45,726) | $ (21,552) | $ 2,221 | $ (5,119) | $ (1,961) |

*See Summary of Significant Assumptions and Accounting Policies*

4

#9923657 v1

*Summary of Significant Assumptions and Accounting Policies*

*General*

The Projections present, to the best of the Debtors' knowledge and belief, the Company's expected financial position and results of operations for the projection periods. Accordingly, the Projections reflect the Debtors' judgment as of July 2008, the date that the projections were prepared. The Projections reflect the Debtors' estimate of their expected consolidated financial position and results of operations of the Reorganized Debtors and their non-debtor affiliates. The Projections were prepared for the periods years ended December 31, 2008, 2009, 2010 and 2011 ("Projection Period"). The Projections were developed using a "bottom up" for approach for the years 2008, 2009 and 2010. The 2008 projections reflect actual results through May 2008 and projected results for the balance of the year. In addition, the Debtors prepared high-level projections for the Company in 2011.

*Effective Date and Plan Terms*

The Projections assume that the Plan will be consummated in accordance with its terms and that all transactions contemplated by the Plan will be consummated by the assumed Effective Date. Any significant delay in the assumed Effective Date of the Plan may have a significant negative impact on the operations and financial performance of the Company including, but not limited to, higher reorganization expenses.

*Revenue*

The Debtor's revenues are directly correlated with the production volume of the large heavy-duty truck OEMs. The Debtors utilized published industry reports and forecasts for the U.S., Canada and Mexico markets to project unit volume and revenues for each business unit. In addition, the revenue projections assume the Company does not lose additional market share of the OEM production volume and renew all existing customer contracts.

The Company's consolidated revenue projections are as follows:[1]

|  | 2007 Actual | 2008 Projected | 2009 Projected | 2010 Projected | 2011 Projected |
|---|---|---|---|---|---|
| Revenue (millions) | $328 | $333 | $419 | $326 | $407 |
| % Change |  | 1.4% | 25.7% | (22.0)% | 24.6% |

*Operating Expenses*

The Projections reflect changes to a number of key operating expenses:
- Higher return transportation cost per trip due to increased airline travel cost per trip;
- Higher equipment return costs due to increased fuel and shipping costs;
- No significant hourly wage and benefit cost increases associated with renewal of union labor agreements;
- Improved workers' compensation cost per trip due to management initiatives;
- Reduction of total support services overhead costs;
- Improved distribution network optimization due to implementation of sourcing and transportation initiatives;
- Receipt of commission income from the Debtor's interest in Mexicana Logistics on a basis consistent with historical practice.

*EBITDA Margin*

The net result of the revenue and cost assumptions is an EBITDA margin (before reorganization and non-

---

[1]    These revenue figures represent carrier operation revenue and exclude surcharge revenue that is a pass-through and offset by a corresponding expense.

recurring charges) in the projected periods as follows:

|  | 2007 Actual | 2008 Projected | 2009 Projected | 2010 Projected | 2011 Projected |
|---|---|---|---|---|---|
| EBITDA Margin | (1.9)% | 3.4% | 5.3% | 3.0% | 3.9% |

*Chapter 11 Reorganization Expenses*

These expenses reflect bankruptcy costs and financing expenses through the Effective Date.

*Interest Expense*

Interest expense in the accompanying projections has been calculated using face value of debt at stated interest rates.

*Taxes*

The Projections assume a post emergence tax rate (federal and state combined) approximating 38% of pretax income based upon the Reorganized Debtors' anticipated post-Effective Date tax attributes. Any tax benefit in the projected periods were limited the amount cash taxes paid in prior projected periods.

*Capital Expenditures*

Net capital expenditures are assumed to be approximately $4.6 million in 2008, $4.8 million in 2009, $3.3 million in 2010 and $4.3 million in 2011.

*Working Capital*

The Projections assume that working capital increases are consistent with the revenue and expenses projections. In addition, for purposes of the Projections, minimum cash balances of approximately $2 million are maintained for working capital. Any excess cash balances are assumed to repay debt.

*Post Reorganization Debt*

The Projections assume that the long term emergence debt will be approximately $68 million outstanding as of the effective date, of which approximately $7 million represents non-recourse debt of Mexicana Logistics, in which the Debtor holds a 50% interest, and is included on the Company's consolidated balance sheet in accordance with GAAP. The Projections also assume that the Company will enter into the Exit Revolving Facility in the amount of $35 million and will have approximately $14.5 million on the Effective Date.

*Balance Sheet Adjustments*

All pre-petition first-lien debt and any accrued but unpaid interest are removed from the balance sheet based on the assumption that it will be extinguished with the proceeds of the $60 million Second-Lien Loan (which is added to the balance sheet). Prepetition accounts payable and accrued liabilities subject to compromise are removed from the balance sheet. Capitalized financing costs are written down to zero. The excess of the reorganization value over the identifiable assets is recorded as an intangible asset.

The asset values are best estimates and subject to change based adjustments pursuant to the application of GAAP and the concepts of Fresh Start Accounting contained in the AICPA Statement of Position 90-7, "Financial Reporting by Entities in Reorganization Under the Bankruptcy Code." Adoption of Fresh Start Accounting requires the determination of the reorganization value of the entity that emerges from bankruptcy. The Debtor attempted to estimate the effect of application of both GAAP and Fresh Start Accounting, but actual application of these standards may significantly impact the Projections.

**Exhibit D**

**LIQUIDATION ANALYSIS**

Pursuant to section 1129(a)(7) of the Bankruptcy Code, often called the "Best Interests Test," each holder of an Allowed Claim or Equity Interest that is Impaired must either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the Plan's Effective Date, that is not less than the value of such non-accepting holder would receive or retain if the Debtors were to be liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date. In determining whether the Best Interests Test has been met, the first step is to determine the dollar amount that would be generated from a hypothetical liquidation of the Debtors' assets under Chapter 7 of the Bankruptcy Code as of the Effective Date. Such amount then would be reduced by the costs and reductions would be required to eliminate cash and liquidation proceeds that would be applied to secured claims and amounts necessary to satisfy Administrative, Tax and other Priority Claims that are senior to the General Unsecured Claims, including incremental Administrative Claims that may result from the termination of the Debtors' business and the liquidation of their assets. Any remaining cash would be available for distribution to general unsecured creditors and shareholders in accordance with the distribution hierarchy established by section 726 of the Bankruptcy Code. The Debtors believe that the Plan meets the Best Interests Test.

***IMPORTANT CONSIDERATIONS AND ASSUMPTIONS***

1)      The Company is comprised of the 17 Debtors and the four foreign non-debtor affiliates. There are certain obligations for which multiple of these separate legal entities are co-obligors, including but not limited to the DIP Credit Facility and the Prepetition Credit Facilities. These obligations are described further in the Disclosure Statement.

2)      The Liquidation Analysis is presented on a consolidated basis. The Debtors are seeking the substantive consolidation of their estates for all purposes associated with confirmation and consummation of the Plan. As set forth in the Disclosure Statement, the Debtors believe that substantive consolidation will not prejudice the rights of any creditor or equity holder.

3)      The Liquidation Analysis was prepared by the Debtors' management, in consultation with their financial advisors, Chilmark Partners, LLC ("Chilmark"). This analysis assumes each chapter 11 case would convert to chapter 7 case as of September 30, 2008. It also assumes that the Debtors would commence liquidation under direction of a chapter 7 trustee and would continue for a period of three months, during which time the Debtors' assets would be sold and the cash proceeds, net of liquidation-related costs, would then be distributed to creditors. Although some assets might be liquidated in less than three months, other assets would be more difficult to collect or sell, thus requiring a liquidation period substantially longer than three months.

4)      The liquidation period would allow for the collection of receivables and the sale of assets. For certain assets, estimates of the liquidation proceeds were made for each asset individually. For other assets, liquidation values were assessed for general classes of assets by estimating the percentage recoveries that a trustee might achieve through their disposition.

5)      The Liquidation Analysis assumes that there would be no recoveries from any potential avoidance claims (including preferences or fraudulent conveyances) or other causes of action that would alter the Debtors' belief that the Plan satisfies the Best Interests Test.

6)      The Liquidation Analysis necessarily contains an estimate of the amount of Claims that will ultimately become Allowed Claims. Estimates for the various classes of Claims are based solely on the Debtors' estimate of Claims as of the Petition Date. No order or finding has been entered by the Court estimating or otherwise fixing the amount of Claims at the projected levels set forth in this Liquidation Analysis. In addition, the Debtors estimated other Claims such as Administrative Claims, Priority Claims,

liquidation expenses, and other costs associated with the liquidation.  In preparing the Liquidation Analysis, the Debtors have projected amounts of Claims that are consistent with the estimated Claims reflected elsewhere in the Disclosure Statement, with certain modifications as specifically discussed herein.  The actual costs of liquidation and a cessation of the Debtors' operations may result in materially higher Claims and liquidation expenses.

The Liquidation Analysis is based on a number of estimates and assumptions that are inherently subject to significant business, economic and competitive uncertainties and contingencies beyond the control of the Debtors and its management, including estimates and assumptions relating to the proceeds of sales of assets, the timing of such sales, the impact of pending liquidations on continuing operations and values and certain tax matters. While the Debtors and Chilmark believe that these estimates and assumptions are reasonable for the purpose of preparing hypothetical chapter 7 liquidation analyses, no assurance exists that such estimates and assumptions would be valid if the Debtors were, in fact, to be liquidated.  Moreover, the Debtors believe that a chapter 7 liquidation could result in substantial litigation that could result in further delay than assumed here. This delay could reduce materially the amount determined on a present value basis available for distribution to creditors. Moreover, the Debtors believe that such litigation and attendant delay could affect adversely the values realizable in the sale of the Debtors' assets to an extent that cannot be estimated at this time.  **ACCORDINGLY, THERE CAN BE NO ASSURANCE THAT THE VALUES REFLECTED IN THE LIQUIDATION ANALYSIS WOULD BE REALIZED IF THE DEBTORS WERE, IN FACT, TO UNDERGO A LIQUIDATION, AND ACTUAL RESULTS COULD VARY MATERIALLY FROM THOSE SHOWN HERE.**

The Debtors believe that a chapter 7 liquidation of the Debtors would result in substantial diminution in the value to be realized by holders of Class 2-Prepetition Facilities Claims, as compared to the proposed distributions under the Plan, because of, among other factors: (a) the failure to realize the maximum going concern value of the Debtors' assets; (b) the substantial negative impact of conversion to a chapter 7 case and subsequent liquidation on the employees and customers of the Debtors; (c) additional costs and expenses involved in the appointment of a chapter 7 trustee (or trustees) and attorneys, accountants and other professionals to assist such trustee(s); (d) additional expenses and Claims, some of which would be entitled to priority in payment, which would arise by reason of the liquidation and from the rejection of unexpired real estate leases and other Executory Contracts and Unexpired Leases in connection with a cessation of the Debtors' operations; and (e) the time that would elapse before creditors would receive any distribution in respect of their Claims. Consequently, the Debtors believe that the Plan will provide a substantially greater ultimate return to holders of Claims than would a chapter 7 liquidation.

**All capitalized terms used in this Liquidation Analysis and not otherwise defined herein shall have the meanings given to them in the Plan.**

**JHT Holdings, Inc.**
**Liquidation Analysis of Consolidated Debtors**
**as of September 30, 2008**

| ($ 000s) | Note | % Recovery Low [a] | % Recovery High [b] | Book Value (Note 1) (Unaudited) [c] | Hypothetical Recovery Amount Low (Unaudited) [a] * [c] | Hypothetical Recovery Amount High (Unaudited) [b] * [c] |
|---|---|---|---|---|---|---|
| **Assets of Debtor Entities** | | | | | | |
| Cash and cash equivalents | 2 | 100% | 100% | $ 4,275 | $ 4,275 | $ 4,275 |
| Accounts receivable, net | 3 | 75% | 85% | 23,542 | $ 17,656 | $ 20,010 |
| Prepaid expenses and other | | | | | $ - | $ - |
| Insurance deposit | 4 | 0% | 0% | 22,891 | $ - | $ - |
| Prepaid insurance | 5 | 0% | 0% | 2,416 | $ - | $ - |
| Other | 6 | 25% | 30% | 1,792 | $ 448 | $ 538 |
| Total prepaid expenses and other | | | | 27,099 | 448 | 538 |
| Total current assets | | | | 54,916 | 22,380 | 24,823 |
| | | | | | | |
| Net PP&E | 7 | | | | | |
| Land & Structures | | 70% | 90% | 11,527 | $ 8,069 | $ 10,375 |
| Revenue Equipment | | 50% | 70% | 889 | $ 444 | 622 |
| Saddles | | 70% | 90% | 743 | $ 520 | 668 |
| Other Equipment | | 20% | 30% | 972 | $ 194 | 292 |
| Leasehold Improvements | | 0% | 0% | 566 | $ - | $ - |
| Net PP&E | | | | 14,697 | 9,228 | 11,957 |
| Investments, goodwill and other intangible assets, net | 8 | 0% | 0% | 92,521 | $ - | $ - |
| Deferred finance and capitalized software, net | 9 | 0% | 0% | 3,619 | $ - | $ - |
| Deferred income taxes | 10 | 0% | 0% | (412) | $ - | $ - |
| Restricted cash - ESOP | 11 | 0% | 0% | 1,043 | $ - | $ - |
| Insurance reimbursements receivable | 12 | 0% | 0% | 37,691 | $ - | $ - |
| Total Debtor assets | | | | $ 204,075 | $ 31,607 | $ 36,780 |
| | | | | | | |
| Orderly Liquidation Value of Mexicana Logistics S.A. de C.V. | 13 | | | | $ - | $ - |
| Orderly Liquidation Value of Canadian Entities | 14 | | | | $ 2,296 | 2,737 |
| | | | | | | |
| **Assets and Other Items Available for Distribution** | | | | | $ 33,903 | $ 39,517 |
| | | | | | | |
| Costs Associated with Liquidation | 15 | | | | | |
| Corporate Payroll / Overhead Costs during Liquidation | | | | | $ (750) | $ (750) |
| Chapter 7 Trustee Fees | | | | | $ (948) | $ (1,103) |
| Chapter 7 Professional Fees | | | | | $ (1,423) | $ (1,696) |
| Costs Associated with Liquidation | | | | | $ (3,121) | $ (3,549) |
| | | | | | | |
| **Net Estimated Proceeds from Asset Liquidation** | | | | | $ 30,782 | $ 35,968 |

**The accompanying notes are an integral part of the Liquidation Analysis**

**JHT Holdings, Inc.**
**Liquidation Analysis of Consolidated Debtors**
as of September 30, 2008

| ($ 000s) | | Low | | High |
|---|---|---|---|---|
| Net Estimated Proceeds from Asset Liquidation | | $ 30,782 | $ | 35,968 |
| **Less DIP Facility Claims:** | 16 | | | |
| DIP Facility Claims (assuming all L/Cs are drawn) | | 14,000 | | 14,000 |
| *Hypothetical Recovery ($)* | | *$ 14,000* | *$* | *14,000* |
| *Hypothetical Recovery (%)* | | *100.0%* | | *100.0%* |
| Net Estimated Proceeds Available for Distribution | | $ 16,782 | $ | 21,968 |
| **Less Prepetition Advance Claims:** | 17 | | | |
| Prepetition Advance Claims | | 1,230 | | 1,230 |
| *Hypothetical Recovery ($)* | | *$ 1,230* | *$* | *1,230* |
| *Hypothetical Recovery (%)* | | *100.0%* | | *100.0%* |
| Net Estimated Proceeds Available for Distribution | | $ 15,552 | $ | 20,738 |
| **Less Prepetition Facilities Claims:** | 18 | | | |
| Prepetition Facilities Claims (assuming all L/Cs are drawn) | | 133,000 | | 133,000 |
| *Hypothetical Recovery ($)* | | *15,552* | *$* | *20,738* |
| *Hypothetical Recovery (%)* | | *11.7%* | | *15.6%* |
| Net Estimated Proceeds Available for Distribution | | $ - | $ | - |
| *Deficiency Claim* | | *$ 117,448* | *$* | *112,262* |
| **Less Administrative & Priority Claims:** | 19 | | | |
| Post-Petition Accounts Payable and Accrued Payables | | 6,349 | | 6,349 |
| Post-Petition Accrued Wages and Benefits | | 8,300 | | 8,300 |
| Sub-Total Administrative Claims | | 14,649 | | 14,649 |
| Priority Tax Claims (other than IFTA) | | 179 | | 179 |
| IFTA Priority Tax Claims | | 995 | | 995 |
| Sub-Total Priority Claims | | 1,174 | | 1,174 |
| Administrative & Priority Claims | | 15,823 | | 15,823 |
| *Hypothetical Recovery ($)* | | *$ -* | *$* | *-* |
| *Hypothetical Recovery (%)* | | *0.0%* | | *0.0%* |
| Net Estimated Proceeds Available for Distribution | | $ - | $ | - |
| **Less Prepetition General Unsecured Claims:** | 20 | | | |
| General Unsecured Claims | | 30,000 | | 30,000 |
| Secured Deficiency Claim | | 117,448 | | 112,262 |
| Pension Claims | | 100,000 | | 85,000 |
| Prepetition General Unsecured Claims | | 247,448 | | 227,262 |
| *Hypothetical Recovery ($)* | | *$ -* | *$* | *-* |
| *Hypothetical Recovery (%)* | | *0.0%* | | *0.0%* |
| Net Estimated Proceeds Available for Distribution | | $ - | $ | - |
| **Less ESOP Put Claim:** | 21 | | | |
| ESOP Put Claim | | 6,000 | | 6,000 |
| *Hypothetical Recovery ($)* | | *$ -* | *$* | *-* |
| *Hypothetical Recovery (%)* | | *0.0%* | | *0.0%* |
| Net Estimated Proceeds Available for Distribution | | $ - | $ | - |

**The accompanying notes are an integral part of the Liquidation Analysis**

## NOTES TO LIQUIDATION ANALYSIS

A summary of the assumptions used by JHT's management and Chilmark in preparing the Liquidation Analysis is set forth below.

*Note 1 – Book Values*
Unless stated otherwise, the book values used in this Liquidation Analysis are the un-audited net book values as of May 31, 2008. The Liquidation Analysis assumes that the actual May 31, 2008 balance sheet is a proxy for the September 30, 2008 balance sheet.

*Note 2 – Cash and Cash Equivalents*
The Liquidation Analysis assumes that operations during the liquidation period would not generate additional cash available for distribution except for net proceeds from the disposition of non-cash assets. It is assumed that cash and cash equivalents of approximately $4 million held in corporate accounts would be 100% collectible.

*Note 3 – Accounts Receivable*
The Debtors assumes that a chapter 7 trustee would retain a staff to process the collection of outstanding accounts receivable. Proceeds from the collection of accounts receivable were estimated using industry-standard borrowing base advance rates. JHT's receivables are primarily from six highly-rated customers and historic collection rates illustrate high recovery values. These advance rates were applied to the May 31, 2008 balance sheet values. The result is assumed to be an estimate of the amount of proceeds that would be available to a secured lender in the event of a liquidation as it is generally deemed adequate to cover the amount of the funds advanced based on the anticipated collections.

Accounts receivable have been discounted to 75% on the low end and 85% on the high end of their net book value as a result of the application of this methodology.

*Note 4 – Insurance Deposit*
These deposits are held as collateral to support the self-insurance portions of the Debtor's auto liability and workers compensation insurance programs. These assets will be offset by a significant amount of liabilities on a liquidation-basis and, therefore, no recovery is assumed.

*Note 5 – Prepaid insurance*
Prepaid insurance primarily consists of premiums associated with the Debtor's workers compensation, auto liability and general liability insurance programs for amounts in excess of any self-insured retention. The Debtors finance a significant portion of their insurance premiums and, therefore, there is an offsetting liability associated with the prepaid insurance. No recovery is assumed.

*Note 6 – Other prepaid expenses*
Other current assets are comprised of prepaid road taxes and licenses as well as tires, parts, supplies and materials used in operations. In general, management's recovery estimates for these assets are based upon such factors as the nature of the asset, its potential use during the liquidation period and each Debtor's ability to recover value. Management estimates it can recover 25% on the low end and 30% on the high end of these assets' book values.

*Note 7 – Property, Plant & Equipment, Net*
Property, plant & equipment, net includes owned land, buildings, machinery and equipment. The recovery rates for property, plant and equipment were determined by assumptions of JHT's management. Generally these assumptions were as follows:
- Land and Buildings: Management estimated recovery of 70% on the low end and 90% on the high end of the net book values. The net book value for land & buildings were adjusted in 2006, at the time of a change in control transaction, to reflect the approximate appraised value at that time.
- Revenue Equipment: Primarily consists of tractors and trailers used in operations. Management estimated recovery of 50% on the low end and 70% on the high end of the net book values.

- Saddles: Management estimated recovery of 70% on the low end and 90% on the high end of the net book values.
- Other Equipment: Primarily consists of (i) passenger trucks and vans used for terminal operations, (ii) yard and shop equipment, such as cranes, hoists and related equipment; and (iii) furniture, fixtures, technology and other office equipment. Management estimated recovery of 20% on the low end and 30% on the high end of the net book values.
- Leasehold Improvements: Management estimated no recovery from leasehold improvements.

*Note 8 – Investments, Goodwill and Other Intangible Assets, Net*
No recovery is assumed.

*Note 9 – Deferred Finance and Capitalized Software, Net*
No recovery is assumed.

*Note 10 – Deferred Income Taxes*
No recovery is assumed.

*Note 11 – Restricted Cash - ESOP*
The represents cash held in escrow for obligations to the JHT Holdings Employee Stock Ownership Plan Trust that is consolidated into the Debtor's financial statements, but is not a Debtor entity. No recovery is assumed.

*Note 12 – Insurance Reimbursement Receivable*
Insurance reimbursement receivables are comprised of receivables associated with any claims extending beyond the Debtor's self-insurance retention limits. No recovery is assumed as the receivable is offset by a liability for the same amount.

*Note 13 – Orderly Liquidation Value of Mexicana Logistics S.A. de C.V*
The Company owns a 50% interest in Mexicana Logistics S.A. de C.V., a non-debtor entity in Mexico. To calculate the orderly liquidation value of that 50% interest, Chilmark performed an orderly liquidation using methodologies similar to those described above and below and applied the Debtor's pro rata proceeds to the Debtor's overall liquidation.

*Note 14 – Orderly Liquidation Value of Canadian Entities*
The Company has three wholly-owned affiliates that operate in Canada. These entities are obligors under both the DIP Credit Facility and the Prepetition Credit Facilities and the related loans are secured by a lien on the assets of the Canadian affiliates and a pledge of the stock of the Canadian affiliates. To calculate the orderly liquidation value of those interests, Chilmark performed an orderly liquidation using methodologies similar to those described above and below and applied the entire proceeds to the Debtor's overall liquidation. The net liquidation value of the Canadian assets is included in the Liquidation Analysis before any deduction for unsecured liabilities at the Canadian affiliates due to the lien in favor of the DIP Credit Facility Lenders and the Prepetition Credit Facilities Lenders.

*Note 15 – Costs Associated with Liquidation*
Corporate payroll and operating costs during liquidation are based upon the assumption that limited corporate employees and functions would be required to oversee the liquidation process. Management has estimated these costs to be approximately $750,000 for a three month liquidation period.

Chapter 7 trustee fees include those fees associated with the appointment of a chapter 7 trustee in accordance with Section 326 of the Bankruptcy Code. Trustee fees are estimated based on historical experience in other similar cases and are calculated at 3% of the total cash generated during the liquidation.

Chapter 7 professional fees include legal and accounting fees incurred during the three-month liquidation period. Professional fees are assumed to be $500,000 for the duration of the liquidation period. In addition, broker fees, closing costs, property taxes, title insurance and other costs will be incurred to liquidate certain real and personal property. Management has estimated these costs to be 10% of the net proceeds from PP&E.

*Note 16 – DIP Facility Claims*
The claims related to the DIP Facility have a first priority lien on the assets of the Debtors and certain of the Debtors' non-debtor affiliates. For purposes of the Liquidation Analysis, the Debtor has assumed the DIP Claim is approximately $14 million, inclusive of the letters of credit projected to be issued and outstanding as of September 30, 2008.

*Note 17 – Prepetition Advance Claims*
For purposes of the Liquidation Analysis, the Debtor has assumed Prepetition Advance Claims total $1.2 million.

*Note 18 – Prepetition Facilities Claims*
For purposes of the Liquidation Analysis, the Debtor has assumed that the Prepetition Facilities Claims total approximately $133 million. This estimate is inclusive of the Debtors' estimate of accrued interest for the Facilities as of the Petition Date and outstanding letters of credit on the Prepetition Credit Facilities. The claim was reduced by the amount of the Prepetition Advances that were either repaid by the DPI Facility (approximately $7,330,000) or classified as a Prepetition Advance Claim (approximately $1,230,000).

*Note 19 – Administrative and Priority Claims*
Administrative and priority claims include estimated Chapter 7 administrative claims, unpaid post-petition operating expenses of the Chapter 11 Estates as estimated by the post-petition accounts payables, and accrued expenses reflected in the Projections as of September 30, 2008. Allowed Priority Claims are estimated based on the Debtors' books and records as of the Petition Date.

*Note 20 – General Unsecured Claims*
For purposes of the Liquidation Analysis, the Debtor has assumed that General Unsecured Claims will consist of estimated General Unsecured Claims of $30 million. In addition, the Liquidation Analysis includes an unsecured deficiency claim attributable to the Prepetition Credit Facilities as noted in the analysis and the estimated unfunded pension liability associated with certain of the Debtors' pension plans.

*Note 21 – ESOP Put Claims*
For purposes of the Liquidation Analysis, the Debtor has assumed that the ESOP Put Claims will be $6 million, pursuant to the terms of the operative ESOP documents.

**EXHIBIT E**

**DISCLOSURE STATEMENT ORDER**